Submitted on remand from the Oregon Supreme Court September 24; resubmitted en banc December 5, 2001, affirmed April 24, 2002

STATE OF OREGON,
*Plaintiff,*

*v.*

WILLIAM THOMAS BRANSTETTER,
*Defendant.*

PIONEER HUMANE SOCIETY,
*Respondent,*

*and*

STATE OF OREGON,
*Respondent,*

*v.*

WILLIAM THOMAS BRANSTETTER,
*Appellant.*

CR970077; A100029

45 P3d 137

Jay Edwards for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Katherine H. Waldo, Assistant Attorney General, for respondent.

No appearance for respondent Pioneer Humane Society.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim and Brewer, Judges.

HASELTON, J.

Armstrong, J., concurring.

Edmonds, J., dissenting.

## HASELTON, J.

Defendant appeals from an order entered in this criminal case, providing for the forfeiture of his 11 horses and one donkey to the Pioneer Humane Society of Umatilla County (humane society). We previously dismissed the case for lack of jurisdiction. *State v. Branstetter*, 166 Or App 286, 1 P3d 451 (2000). On review, the Supreme Court reversed our decision and remanded for us to determine the merits of defendant's claims. *State v. Branstetter*, 332 Or 389, 29 P3d 1131 (2001). After considering defendant's arguments on the merits, we now affirm.[1]

In January 1997, a search warrant was executed at the pasture in which defendant kept his animals, and his animals were seized and placed in the custody of the humane society. Defendant was charged by information in February 1997 with 12 counts of animal neglect in the first degree, a Class A misdemeanor. ORS 167.330. Defendant's trial was scheduled for October 22, 1997. On September 17, 1997, the humane society filed a petition for forfeiture of the animals. *See generally* ORS 167.347 (permitting impounded animals to be forfeited prior to final disposition of criminal charges under some circumstances). On October 1, 1997, the court held a hearing on the forfeiture petition. On October 15, 1997, the court signed an order allowing forfeiture of all of the animals if a bond in the amount of $2,700, to cover the cost of care for the animals, was not paid within 72 hours. The court made a specific finding that defendant had the financial ability to post the bond. On October 22, the court ordered the animals forfeited because defendant had not posted the bond. On the same day, the court entered a judgment of acquittal on all 12 animal neglect criminal charges.

Defendant appealed the forfeiture of his animals. He frames the issue presented on appeal as: "Was defendant denied constitutional due process and right to a remedy as a consequence of the forfeiture statute that did not provide for

---

[1] In our original opinion, the majority, in response to the dissent, included a discussion of the merits of defendant's arguments. 166 Or App at 296-97. The Supreme Court correctly characterized that discussion as *dictum*. *See* 332 Or at 403 n 13.

setting aside the forfeiture(s) subsequent to the acquittal(s)?" In his argument, defendant states broadly that a forfeiture that is not reversed as a result of acquittal violates not only the due process and remedies clauses, but also the "right to a jury trial, right to require proof beyond a reasonable doubt, right against double jeopardy and right against excessive fines." Defendant's entire "excessive fines" argument on appeal consists of the statements that "[a]ny fine/punishment is excessive where acquittals are entered," and that defendant's rights under the Eighth Amendment to the United States Constitution, as well as other rights, "are abrogated by allowing forfeiture(s) in spite of the acquittals."

In the trial court, defendant's "excessive fines" argument was just as cursory, although not identical to what he argues on appeal. In the trial court, defendant was in the position of having to oppose the forfeiture before his criminal trial (and his acquittal) had occurred. Defendant argued, in pertinent part: "[ORS 167.347] makes no provision for return of bond amounts utilized in the event the defendant is acquitted of the criminal charge, nor does it allow for return of the animals forfeited in lieu of bond if the defendant is acquitted."[2] He argued that forfeiture was not permissible on a restitution theory because the humane society was not a "victim" and because restitution is permitted only upon conviction. Finally, he argued that ORS 167.347 imposes excessive fines because it does not provide for the court to consider a defendant's ability to pay.

We reject defendant's due process and remedies clause arguments without discussion. As to "excessive fines," defendant's only argument on appeal is that, because he was acquitted on the criminal animal neglect charges, *any* forfeiture to cover the costs of his animals' care during the pendency of the criminal prosecution violates the excessive fines provisions of Article I, section 16, of the Oregon Constitution,

---

[2] Defendant also made an argument, not repeated on appeal, that the total value of the animals, when added to the costs of their care at the humane society, exceeded the maximum statutory fine permissible for 12 counts of animal abuse in the first degree.

and the Eighth Amendment to the United States Constitution. Defendant offers no authority for that absolutist proposition, and we are aware of none. We therefore reject defendant's argument without further discussion.

The dissent would credit defendant with an argument that the forfeiture of defendant's animals constituted an excessive fine because the value of the animals was disproportionate to the costs of their care. Defendant never made and preserved such a contention below. Contrary to the dissent's suggestion, nothing defense counsel said to the trial court would reasonably have alerted the court to the analysis that underlies the dissent. *See generally State v. Hitz,* 307 Or 183, 766 P2d 373 (1988).

■ More significantly, defendant makes no such argument on appeal. Further, the argument the dissent imputes to defendant is qualitatively different from the only argument defendant *does* make. Accordingly, prudential principles of preservation preclude its consideration. *See generally J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.,* 132 Or 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995).[3]

Affirmed.

**ARMSTRONG, J.,** concurring.

The majority correctly decides the issues that defendant both preserved at trial and raised on appeal. I agree with its result and join in its opinion. I write separately to discuss the ways in which the dissent's analysis—which is not based on any argument that defendant actually made—seriously misconstrues both the language and purpose of the statutes.

The underlying issue in this case is whether defendant can avoid the statutory consequence of his refusal to

---

[3] We reiterate: Defendant, as appellant, simply does not raise any contention approximating the disproportionality challenge that underlies the dissent. As we noted in another context, "although it is axiomatic that we may affirm on grounds not argued to the trial court, there is no authority for the proposition that, without invoking 'plain error,' we can *reverse* the trial court on grounds not argued to it." *State ex rel Juv. Dept. v. Pfaff,* 164 Or App 470, 480 n 6, 994 P2d 147 (1999), *rev den* 331 Or 193 (2000) (emphasis in original). Much less is there any authority that we can reverse on grounds not argued *to us.*

post a bond to pay for the care that his animals received while they were legally in state custody. I begin by describing the relevant statutes and how they functioned in this case, briefly looking at defendant's arguments, and then explaining the problems with the dissent's approach.

The sheriff impounded defendant's animals under the authority of ORS 167.345(2) (1999),[1] which permitted that action, under the authority of a search warrant, if "there is probable cause to believe that any animal is being subjected to treatment in violation of ORS 167.315 to 167.340." Those statutes define the crimes of animal abuse, animal neglect, and animal abandonment. ORS 167.345(3) then authorized the court to order the animals held in any animal care facility in this state, which must provide them with food and water and which may provide veterinary care. Defendant does not challenge the issuance of the search warrant or the impoundment of his animals at the Pioneer Humane Society, nor does he argue that he was entitled to regain custody of the animals before his acquittal in the criminal case.

An obvious practical problem that arises when animals are impounded under ORS 167.345 is the need to pay for the food, water, and care that they receive. In ORS 167.347, the legislature dealt with that problem by authorizing the court to impose the obligation to provide care on the animals' owner. ORS 167.347(1) authorizes the agency that has custody of the impounded animals to file a petition in the criminal action asking the court to issue an order forfeiting the animals to the agency before final disposition of the criminal charge.[2] At the hearing on the motion, the petitioner has

---

[1] All statutory citations are to the versions that were in effect at the time of the events in issue. The 2001 Legislature subsequently amended some of them. Or Laws 2001, ch 926, §§ 12, 13, 14a.

[2] Although the agency files the motion in the criminal case, the forfeiture proceeding is entirely separate from the criminal proceeding.

"There is no necessary connection between the content of a forfeiture proceeding under ORS 167.347 and the criminal action in which, by statute, the forfeiture petition may be filed. Although a forfeiture proceeding under ORS 167.347 formally depends on a criminal action for its existence in that it can go forward only if a criminal action of a specified sort is pending, that kind of forfeiture proceeding does not arise out of the criminal action, resolve any controversy in the criminal action, or otherwise affect or depend on the substance of the criminal action." *State v. Branstetter*, 332 Or 389, 398-99, 29 P3d 1121 (2001).

the burden of proving that there was probable cause to believe that the animals were subjected to abuse, neglect, or abandonment. ORS 167.347(3)(a). The purpose of proving probable cause is to show that the animals are legally in the agency's custody under ORS 167.345. The court's determination of probable cause has no effect on the criminal case against the owner, as the forfeiture proceeding is entirely separate from the criminal prosecution. *See State v. Branstetter*, 332 Or 389, 398-99, 29 P3d 1121 (2001).

If the court finds that probable cause exists, it will give the defendant 72 hours to post a security deposit or bond in an amount that the court determines to be sufficient to repay the reasonable costs that the agency has incurred, and anticipates incurring, in caring for the animals from the date of initial impoundment to the date of trial. The court may waive the requirement of a bond for good cause shown. If the owner fails to post the bond, and the court does not waive the requirement, the court will order the animals forfeited to the agency. ORS 167.347(3).

It is irrelevant to forfeiture under ORS 167.347 whether the owner is innocent or guilty of the criminal charge, because the purpose of the forfeiture is to pay for the care of the animals, not to punish the owner. The provisions of ORS 167.347 are in addition to the criminal sanctions provided in ORS 167.350, which is the statute concerning forfeiture of the animals as a sanction on conviction. ORS 167.347(5). Thus, although a forfeiture proceeding under ORS 167.347 takes place in the criminal action, it does not arise from that action, is entirely separate from it, and, necessarily, is not governed by the rules that apply to criminal prosecutions. *See Branstetter*, 332 Or at 398-99.

What ORS 167.347 does is to provide a way to implement the legal principle that, despite the impoundment, the obligation to provide adequate care for the animals remains the owner's, not the government's. The legislature used the value of the animals and the owner's desire not to lose them permanently as a source of payment for their care.[3] In ORS 87.159, the legislature gave the animal care agency a lien on

---

[3] The trial court expressly found that defendant was able to provide the bond that it required. Thus, the statutory procedures gave him the ability to avoid forfeiture of the animals if he had chosen to do so.

the animals to cover the cost of their care. In ORS 167.347, it provided a swifter and more efficient method of achieving the same result.

Defendant's arguments on appeal misunderstand the nature of this procedure. He treats forfeiture as a punitive measure rather than as a method of ensuring payment for the care of his animals during the pendency of the criminal case. Based on that understanding, he makes his acquittal of the criminal charges the foundation of all of his arguments. According to defendant, that acquittal made forfeiture, whatever the reason or authority for it, improper. In his brief, he states the question on appeal as whether he was denied due process and a right to a remedy "as a consequence of the forfeiture statute that did not provide for setting aside the forfeiture(s) subsequent to the acquittal(s)." His argument to the trial court that the forfeiture constituted an excessive fine was that it would be excessive to forfeit the animals if he were acquitted, because that would violate the prohibition on disproportional punishment. On appeal, he begins his argument with the statement that the statute's failure to allow relief from the forfeitures based on his acquittals denies him due process because "it allows substantial punishment of the defendant in direct disregard of the acquittal(s)." "What meaning is there to a jury trial where the jury acquits, but the substantial punitive forfeitures remain in place based on the trial judge's determination of guilty based on a 'probable cause' standard regard[ing] the same charged act(s)?"

The essential foundation of defendant's argument, thus, is that the requirement of a bond and the forfeitures are punishment for the crimes with which he was charged. If defendant were correct on that point, he would be correct on all others. As we stated in our original opinion in this case, "[b]ecause of defendant's acquittal, *any* fine for that offense would be excessive and beyond the trial court's authority." "There can be no sentence, probation or other sanction after an acquittal." *State v. Branstetter*, 166 Or App 286, 296, 289-90, 1 P3d 451 (2000), *rev'd on other grounds* 332 Or 389, 29 P3d 1121 (2001) (emphasis in original).[4]

---

[4] In its opinion, the Supreme Court expressly agreed with the second of the quoted statements. *Branstetter,* 332 Or at 396.

Defendant is wrong. The purpose of ORS 167.347 is to enforce the owner's obligation to care for the animals; the statute does not impose a penalty of any sort for any kind of misconduct. The reason that the court must find probable cause for the impoundment, a requirement that provides the foundation for some of defendant's arguments, is to ensure that the impoundment is legal under ORS 167.345. It has nothing to do with the defendant's guilt or innocence of the charges and, as defendant's acquittal in this case shows, does not affect the outcome of the trial. Defendant challenges neither the trial court's findings that there was probable cause to impound the animals nor its finding that he had the ability to post a bond. Thus, he provides no basis for holding that the statute did not apply to him.

This brings me to the dissent, which both misunderstands the statute and turns on an argument that defendant did not make at trial or on appeal. The dissent focuses on the apparent disproportion between the $2,700 that the court found to be the cost of caring for the animals up to the time of the order of forfeiture and defendant's assertion that they were worth more than $12,000 at that time. It does not point to any portion of defendant's brief that refers to this point, even tangentially. As I described, defendant's arguments on appeal are based on his acquittal, which, he says, should undo the forfeiture in its entirety. The theme of his excessive fines argument is, quite properly, that, because of his acquittal, *any* fine would be excessive.[5] If he is correct, there is no need for an extensive excessive fines analysis. If he is incorrect, an excessive fines analysis is irrelevant. The dissent, nevertheless, engages in a misguided excessive fines analysis without explaining why ORS 167.347 imposes any kind of fine or how the issue can arise after an acquittal.[6]

---

[5] At the forfeiture hearing in the trial court, which occurred before his acquittal, defendant may have suggested that the value of the horses was disproportionate to the potential punishment, in part because there was no provision for undoing the forfeiture in the case of an acquittal. He does not make that argument on appeal, and one would not expect him to do so. Discussing whether the punishment that a person received is proportionate to a crime of which the person was acquitted is meaningless.

[6] The dissent relies on federal cases to interpret the excessive fines provision of Article I, section 16, of the Oregon Constitution, asserting without analysis that the scope of the state and federal clauses is identical. Because I believe that both

The dissent discusses a number of United States Supreme Court cases that consider whether a civil penalty or forfeiture is an excessive fine. As the dissent's quotations from those cases show, in each case the civil penalty or forfeiture was directly tied to the defendant's violation of a law. Thus, in *Austin v. United States*, 509 US 602, 113 S Ct 2801, 125 L Ed 2d 488 (1993), the defendant brought two grams of cocaine from the mobile home that the government sought to forfeit, to the body shop that the government sought to forfeit, in order to consummate a sale of the cocaine. As the dissent quotes *Austin*, the " 'question is not * * * whether forfeiture * * * is civil or criminal, but rather whether it is punishment.' " 181 Or App at 79 (Edmonds, J., dissenting) (quoting *Austin*, 509 US at 610). In the portion of *Hudson v. United States*, 522 US 93, 118 S Ct 488, 139 L Ed 2d 450 (1997), that the dissent quotes, the Court considered whether "a particular punishment is criminal or civil[.]" 181 Or App at 79 (Edmonds, J., dissenting) (quoting *Hudson*, 522 US at 99). ORS 167.347, however, does not impose punishment of any sort, either civil or criminal. It simply provides a mechanism for enforcing the owner's obligation to care for the animals. Thus the issue in the federal cases, whether a penalty that is nominally civil is in fact criminal, cannot arise under this statute because there is no penalty.

The dissent's attempt to avoid this conclusion involves a serious misunderstanding of the relevant statutes. The dissent begins with the fact that the agency must show that there was probable cause to impound the animals. The purpose of that requirement is simply to prove that the agency has the animals legally. That determination has

---

excessive fines clauses are irrelevant, I will limit myself to pointing out that that approach is inconsistent with the way that we normally analyze the state constitution. *See, e.g., State v. Caraher*, 293 Or 741, 653 P2d 942 (1982) (interpreting Article I, section 9, of the Oregon Constitution independently of the United States Supreme Court's interpretation of the almost identical language of the Fourth Amendment). Unlike the dissent, 181 Or App at 78 n 5 (Edmonds, J., dissenting) the Oregon Supreme Court has never relied on an Indiana decision to determine the relationship between an Oregon constitutional provision and the comparable portion of the United States Constitution. Doing so is both inconsistent with Oregon law and inappropriate, particularly for Indiana cases decided after 1859. *See State v. Soriano*, 68 Or App 642, 649 n 8, 684 P2d 1220, *opinion adopted* 298 Or 392, 693 P2d 26 (1984).

nothing to do with the merits of the criminal case. The dissent does not even refer to the foundation of the Supreme Court's ruling that we have jurisdiction over this appeal—that the forfeiture proceeding is separate from the criminal proceeding, even though they may have the same case number. This "kind of forfeiture proceeding does not arise out of the criminal action, resolve any controversy in the criminal action, or otherwise affect or depend on the substance of the criminal action." *Branstetter*, 332 Or at 398-99. If it were not for that conclusion, the court would have affirmed our previous decision dismissing the appeal.

The dissent then confuses ORS 167.347 with ORS 167.350, which provides for forfeiture of the animals as part of a sentence on conviction. According to the dissent, ORS 167.350 "provides that the court may impose, as part of the sentence, an order to forfeit the animals *so that the costs of care can be repaid* in the event that the defendant is convicted." 181 Or App at 80 (Edmonds, J., dissenting) (emphasis added). The statute provides no foundation for the emphasized portion of the dissent's statement. Rather, ORS 167.350 permits a court, as part of sentencing a person convicted of animal abuse, to order the animals forfeited *and also* to order the defendant to repay the agency's reasonable costs in caring for the animals before judgment. ORS 167.350(1), (3). That statute is unquestionably punitive, and it requires a conviction before it can become effective. Under it, there is no necessary relationship between the forfeiture and the cost of caring for the animals; the defendant may both suffer the forfeiture *and* be required to pay for their care. There is no provision for the defendant to post a bond to avoid the forfeiture; the purpose of the forfeiture is to remove the animals from what the conviction has proved to be an abusive situation, not to provide for their possible return to the defendant. None of those things applies to a pretrial forfeiture under ORS 167.347.

ORS 167.347 is simply not the kind of civil sanction that the United States Supreme Court has considered when discussing whether a particular forfeiture or penalty is potentially subject to the excessive fines clause. Again, the dissent quotes a statement that makes that clear. In *United States v. Ursery*, 518 US 267, 116 S Ct 2135, 135 L Ed 2d 549

(1996), the Court stated that civil forfeiture statutes are "designed primarily to confiscate property that has been used in violation of the law, and to require disgorgement of the fruits of illegal conduct." *Id.* at 284, quoted at 181 Or App 81 (Edmonds, J., dissenting). A forfeiture statute that is designed to achieve those purposes is clearly subject to the analysis that the dissent describes. The problem is that ORS 167.347 is not that kind of statute. Under it, forfeiture does not depend on showing that the animals were used in violation of the law, and there are no fruits of illegal conduct for defendant to disgorge. Under the statute, the possibility of forfeiture is a way of protecting the agency's (and possibly the government's) financial interests, not a method of imposing any penalty or sanction, civil or criminal, on the defendant.[7] The dissent's attempt to cut the statute here and stretch it there so that it will fit into the Procrustean bed that the dissent wants to construct out of federal cases that deal with a very different scheme fails. That attempt also has nothing to do with anything that defendant argued on appeal.

It may be that the disparity between the alleged value of the animals and the amount of the bond could give rise to a constitutional claim of some sort. Neither defendant nor the dissent has identified one, however. Thus, even if we were to reach the issues that the dissent discusses, our decision affirming the forfeiture would remain correct.

**EDMONDS, J.,** dissenting.

Pursuant to ORAP 5.45, the majority holds that defendant has not preserved the issue in the trial court that he raises before this court under the Eighth Amendment to the United States Constitution, and Article I, section 16, of the Oregon Constitution. Consequently, it does not consider defendant's excessive fines challenge on its merits. I disagree because the record demonstrates that defendant adequately preserved the issue below that he raises on appeal, and I

---

[7] The legislature may also have hoped to allow the agency to obtain title to abused pets that had little or no monetary value, so that the agency could find new owners for them rather than having to care for them during extended criminal proceedings with no hope of repayment from the owner. That purpose, also, has nothing to do with punishing a wrongdoer and everything with requiring the owner to fulfill the obligation of taking proper care of the animals at the risk of losing them by failing to do so.

would reverse the trial court's forfeiture order because defendant has been denied his property interests in the value of his animals, contrary to both the Oregon and the United States constitutions.[1]

The requirement of preservation under ORAP 5.45 exists because this court functions as an error-correcting court. As the Oregon Supreme Court said in *State v. Linthwaite*, 295 Or 162, 175, 665 P2d 863 (1983):

> "Generally speaking, [the Court of Appeals] is not required to consider claims of error not presented to the trial court. The rationale for that proposition is that unless the matter has been properly brought to the trial court's attention in making its ruling, there is no error to correct."

As we noted in *J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995), adherence to preservation requirements is important because

> "the requirement that an issue be presented to the lower tribunal in order for it to be raised on appeal serves to prevent error. If the first tribunal is given the opportunity to make a ruling, its ruling may well be correct. Relatedly, it would be a disservice to the economy of the process to require the lower tribunal to conduct further proceedings in order to rectify an error that it was never given the initial opportunity to avoid.
>
> "The second reason is that requiring a party to present its issues at each adjudicative level is essential to a fair process for the other parties and participants. Generally, the opportunity to respond at the appellate level does not cure the denial of that opportunity in trial court and agency proceedings, where all of the factual and much of the legal development of cases must occur."

Whenever we decline to review a trial court's ruling on preservation grounds, it is important to keep in mind the purposes underlying the rule of preservation.

In regard to the issue of preservation, this case is not unlike *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988). In *Hitz*,

---

[1] I agree with the majority's disposition of defendant's challenges based on due process and remedies clause arguments.

the defendant appealed her conviction for the unlawful misapplication of entrusted property, claiming that the trial court should have entered a judgment of acquittal for lack of evidence showing that the alleged misapplication was unlawful. This court affirmed the conviction on the ground that defendant did not preserve the issue in the trial court that she raised on appeal. In the trial court, the defendant argued that there was no evidence that the defendant "had knowledge that any misapplication of funds, if it has at all been shown that this was a misapplication, was done unlawfully." *Hitz*, 307 Or at 187. We held that the defendant had abandoned the argument on appeal that there was no evidence of an unlawful misapplication, characterizing her argument on appeal as an assertion that her conduct violated no statute or government regulation. *State v. Hitz*, 92 Or App 136, 139, 757 P2d 448 (1988). On review, the Supreme Court reversed. It held that the defendant had adequately preserved the issue in the trial court of whether she had unlawfully misapplied the property in question. It explained,

> "We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. *See Cooper v. Eugene School District No. 4J*, 301 Or 358, 369 n 12, 723 P2d 298 (1986). The first ordinarily is essential, the second less so, the third least. Thus, when a potential constitutional violation is involved, the parties omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision. *See State v. Kennedy*, 295 Or 260, 267, 666 P2d 1316 (1983). Of course, it is important to efficient judicial procedures that the positions of the parties be clearly presented to the initial tribunal and on appeal. *See, e.g., Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977). But an equally important justification for requiring preservation of claims of error, consistent with the directive to administer justice 'completely,' Or Const, Art I, § 10, is fairness to the adversary parties, and court can avoid taking parties by surprise by inviting memoranda on inadequately briefed questions. *State v. Kennedy, supra*, 295 Or at 268. Efficient procedures are instruments for, not obstacles to, deciding the merits, particularly when the alternative is a criminal conviction that lacks a basis in law or in fact. The state was not ambushed or misled or denied an opportunity to meet defendant's

argument in this case." *Hitz*, 307 Or at 188-89 (emphasis in original; footnote omitted).

The court concluded that although the defendant had argued to the trial court that the state had not proved her knowledge of any unlawful misapplication of funds, nevertheless, the *issue* (whether the state had proved a misapplication that violated a statute or law) was preserved. The fact that the defendant made a different argument on appeal regarding that issue than she made to the trial court did not defeat her appeal.

Consequently, the correctness of the majority's decision declining to review defendant's appeal turns on whether defendant raised the *issue* of an excessive fine under the Eighth Amendment and Article I, section 16, at trial. Under *Hitz*, defendant's failure to make a particular argument in the trial court does not operate to defeat his appeal so long as the issue was raised. As the *Hitz* court pointed out, it is least essential for a defendant to have made a particular argument to the trial court. Ultimately, the question is whether the trial court and the state were ambushed, misled, or denied an opportunity to meet the issue raised on appeal.[2] On appeal, defendant argues:

"The forfeitures were ancillary to the criminal charges of animal abuse. In order to order the forfeitures, the trial court was required to find—at a probable cause standard— that defendant was guilty of animal abuse in violation of the criminal statutes (ORS 167.310 to ORS 167.3400. The statutory scheme provided for no reversal of the forfeiture where—as here—the charged individual was acquitted. Thus, *the forfeitures - in light of the acquittals - had the effect of punishing the defendant* in disregard of all of his United States Constitutional trial rights as an accused in a criminal proceeding and in disregard of all of his trial rights under the Oregon Constitution including—but not limited to—his constitutional right to due process of law, right to a jury trial , right to require proof beyond a reasonable doubt,

---

[2] *Webster's Third New Int'l Dictionary* defines an "issue" as "a single material point of law or fact depending in a suit that is affirmed by one side and denied by the other and that is presented for determination at the conclusion of the pleadings." *Webster's Third New Int'l Dictionary*, 1201 (unabridged ed 1993). In contrast, an "argument" is "an effort to establish belief by course of reasoning." *Black's Law Dictionary*, 137 (4th ed 1968).

right against double jeopardy and *right against excessive fines.*" (Emphasis added.)

In the trial court, defendant first raised the excessive fines issue in response to the September 17, 1997, petition by the humane society seeking forfeiture of defendant's animals. That petition alleged that all of defendant's animals should be forfeited to compensate the humane society for the care it had furnished. Defendant filed a motion through his court-appointed attorney to dismiss the petition. He argued, in part, that the forfeiture proceeding violated his constitutional rights because it "requires the payment of costs which are disproportional [to] the [*sic*] the crime with which defendant is charged." In an accompanying memorandum in support of his motion, defendant's counsel wrote, "[n]ow, [the petitioner] seeks not only forfeiture of the animals, valued at over $12,000, but all fees associated with the cost of the keeping of those animals for the last 12 months, alleged to be in excess of $5,000." Significantly, counsel cited in his memorandum to the Eighth Amendment to the United States Constitution and observed, "Although the Eighth Amendment does not apply in civil actions between private parties, this forfeiture proceeding is brought 'in the criminal action' and *so the proscription against excessive bail and forfeiture applies.*" (Emphasis added.)

On October 1, 1997, the trial court held a hearing on the petition for forfeiture. Defendant and his court-appointed attorney were present, as were a deputy district attorney and the attorney for the humane society. The court took extensive testimony from witnesses and reviewed photographs of the animals. The state presented evidence that established the value of the care provided to the animals in the amount of $2,700. Defendant testified about his animals' value:

> "Well, in the spring, I suppose, when they're in more demand, they're probably worth somewhere close to twelve, fifteen thousand dollars but, in the fall, then the demand is decreasing, then people start selling their horses and they end up, half of them, go through the slaughter house and they're probably down around eight hundred dollars or so, around there."

There was no evidence that contradicted defendant's evaluation. The state asked the trial court to order forfeiture of all the animals based on a record that demonstrated unequivocally that their value significantly exceeded the proven costs of their care. Near the end of the hearing, the trial court said to the parties:

"One of the issues you didn't address was, assuming I find probable cause, and you're going to write me a memo on the other issue, was there any evidence [of the costs of the care provided], other than the $2700? Because it says, If the court finds probable cause, the court shall order immediate forfeiture unless the defendant, within 72 hours, posts a security bond in an amount determined to be sufficient. It says, determined by the court. So, the only amount I have right now is $2700."[3]

Based on the record before it, the trial court found that probable cause existed to believe that the seized animals had been neglected in violation of the criminal statute under which defendant was charged. In a written order issued five days later, the court ruled further,

"Once this court makes its finding of probable cause under the statute it is to set a bond or security amount to be sufficient to * * * 'repay all reasonable costs incurred, and

---

[3] It is inferable from the transcript that the state believed that the court had to resolve the threshold issue of probable cause before it decided the amount of the forfeiture. The deputy district attorney, in response to the above statements, told the court:

"[The evidence of the humane society's costs] isn't an element for this hearing. This is something that we've established outside of this hearing."

Counsel for the humane society then stated:

"I think that it's an issue that you have—all you have to do is get past the probable cause at this point and then it becomes a matter of just establishing the amount of the bond, which I think is a different issue than the probable cause issue, as to whether or not there should be a forfeiture. And then, if we get to that point, if it gets to that point, then I think it becomes an issue of what amount it costs, how—what should be the amount of bond that should be established."

The court asked, "Do you have a suggestion for what I would do, assuming I went to that point?" Counsel responded,

"I think it could be done either a couple of ways. I think a petition could be filed, indicating this is what costs have been incurred and if that resulted in a hearing, then it results in a hearing. * * * They don't believe that's a part of the proof that's a part of this hearing. I think you've got to get past the initial point first."

anticipated to be incurred.' In this case, *the only evidence before the court is for costs expended to date of two thousand seven hundred dollars ($2700)*. Therefore, pursuant to statute the defendant is allowed seventy two (72) hours from the date of this order to either post a bond in this amount *or the animals shall be forfeited*." (Emphasis added; citation omitted.)

On October 15, 1997, the court signed a further order authorizing forfeiture of all of the animals if the bond was not paid. So far as the record indicates, no petition was ever filed alleging that the humane society's costs were in excess of $2,700, and no hearing was ever held on the amount of the forfeiture despite defendant's testimony regarding the value of the animals and the trial court's concern about the lack of evidence.

In a motion dated October 16, defendant moved for reconsideration of the forfeiture order. Among other things, defendant argued in the motion that he had not been afforded an opportunity to be heard on the waiver of the bond requirement, because the court had already ordered the forfeiture, and that he was financially unable to post a bond in the amount of $2,700. He also argued that the statute permitted a waiver of the bond requirement "for good cause," which should be allowed because of his indigency, that he had been denied due process by being denied the opportunity to argue for a waiver of the bond, and that, by ordering a bond without considering defendant's financial condition, the court was "infringing upon *excessive bail prohibitions* under the state and federal constitutions." (Emphasis added.) Defendant also asked the court to stay its forfeiture order until the criminal proceeding was completed, so that he could appeal.

The court held a hearing on defendant's motion on October 17, 1997. The court heard a statement from the defendant and the arguments of counsel. It then denied defendant's motion to waive the bond requirement. It found that defendant had assets that could be converted into cash to pay the bond and that the $2,700 was, in its opinion, a fair amount to impose as a bond. The court acknowledged again, at least implicitly, that it was aware of the problem of the disparity between the value of the animals and the costs of care that had actually been proved by the state. It said,

"The district attorney is candid in that his inexperience led to, and I don't mean to pick on him, but everyone has a first case in some area at some point in their life, and certainly I've had my share of first cases, but had he offered evidence of what it really cost, other than the one horse that came up, bottom line, it would be way more money. It doesn't take a rocket scientist to figure that out $2700 is pretty cheap in this case with all the horses."

It ordered that "$2,700 be posted within 72 hours." The court explained that, despite defendant's indigency for purposes of receiving court-appointed counsel, it believed that the testimony established that defendant had access to two sources of cash that enabled him to post a bond: (1) by selling his alfalfa or (2) from a purported transaction with a friend from Washington. When defendant failed to post a bond by October 22, 1997, the court ordered *all* of the animals to be forfeited to the humane society. On that same day, the jury returned a "not guilty" verdict on all counts of the criminal information. Defendant now appeals from the forfeiture order.

What the foregoing record demonstrates is that, throughout the proceedings in the circuit court, defendant raised Eighth Amendment and Article I, section 16, issues concerning excessive fines. Defendant referred to excessive fines and the Eighth Amendment on two different occasions. He also told the trial court that the forfeiture was disproportionate. The court itself twice pointed to the costs of care that had been proved. On those facts, it is difficult to perceive how the court and the state were ambushed, misled, or denied an opportunity to meet the issue of an excessive fine. Instead, the record shows that the trial court was aware of the state's failure to prove costs equivalent to the value of the animals and was aware or should have been aware of the problem of imposing an excessive fine, in light of defendant's citation to the Eighth Amendment. The trial court even admonished the state's attorney regarding his failure to offer additional evidence regarding the cost of care for the animals.

An issue raised to a trial court does not become unpreserved simply because the court does not address it. While the majority may be correct that defendant did not expressly raise the *argument* that the order forfeiting all of

his animals was disproportionate to the state's proven costs, he repeatedly raised the excessive fines *issue*, thus enabling the trial court and the parties to address the issue. In essence, the majority holds that the excessive fines issue was not raised below because the trial court's concern was not articulated in terms of "proportionality." However, the lack of proportionality, as will be demonstrated later in this opinion, is at the heart of any excessive fines problem. If anything, the facts showing that the trial court recognized or should have recognized the excessive fines issue are stronger than the facts in *Hitz* regarding the failure to prove an element of the crime charged. In *Hitz*, the court held that the rules of preservation should not be obstacles to deciding a case on the merits when the court and the opposing party have not been denied an opportunity to confront the position asserted in the trial court. That should be the result in this case, too. Consequently, the majority errs when it holds that defendant did not preserve the excessive fines issue in the trial court because he does not make the same argument on appeal that he made in that court.

On the merits of the excessive fines challenge, the trial court expressly found that the only evidence of the reasonable value of care furnished by the humane society was $2,700. Notwithstanding that amount, the trial court ordered a forfeiture of all of the animals, valued in excess of $12,000. In my analysis that follows, I concern myself only with the value of the forfeited animals to the extent that it exceeds $2,700. In my view, the purpose of the statute under which defendant's animals were forfeited is to compensate for the reasonable value of services provided by the humane society.[4] Thus, I inquire whether the lack of proportionality

---

[4] ORS 167.347 (1999) provides:

"(1) If any animal is impounded pursuant to ORS 167.345(2) and is being held by a county animal shelter or other animal care agency pending outcome of criminal action charging a violation of ORS 167.310 to 167.340, prior to final disposition of the criminal charge, the county or other animal care agency may file a petition in the criminal action requesting that the court issue an order forfeiting the animal to the county or other animal care agency prior to final disposition of the criminal charge. The petitioner shall serve a true copy of the petition upon the defendant and the district attorney.

"(2) Upon receipt of a petition pursuant to subsection (1) of this section, the court shall set a hearing on the petition. The hearing shall be conducted within 14 days of the filing of the petition, or as soon as practicable.

between the state's proven harm and the penalty suffered by defendant through the loss of all his animals implicates defendant's constitutional rights under Article I, section 16, of the Oregon Constitution. The question is whether, regardless of defendant's acquittal, was he "fined" because the order imposing costs on him exceeded the state's cost for care provided to defendant's animals?[5]

The portion of Article I, section 16, relevant to this case provides that "[e]xcessive bail shall not be required, nor excessive fines imposed." The purpose of Article I, section 16, is self-evident. Those who face criminal prosecution should not be punished beyond what is just. *See, e.g., State v. Ross,* 55 Or 450, 479-80, 106 P 1022 (1910), *appeal dismissed* 227 US 150 (1913) (holding a fine excessive because it was greater than the defendant could pay in a lifetime). The "excessive fines" language in Article I, section 16, is identical to the language in the Eighth Amendment to the United

---

"(3)(a) At a hearing conducted pursuant to subsection (2) of this section, the petitioner shall have the burden of establishing probable cause to believe that the animal was subjected to abuse, neglect or abandonment in violation of ORS 167.310 to 167.340. If the court finds that probable cause exists, the court shall order immediate forfeiture of the animal to the petitioner, unless the defendant, within 72 hours of the hearing, posts a security deposit or bond with the court clerk in an amount determined by the court to be sufficient to repay all reasonable costs incurred, and anticipated to be incurred, by the petitioner in caring for the animal from the date of initial impoundment to the date of trial.

"(b) Notwithstanding paragraph (a) of this subsection, a court may waive for good cause shown the requirement that the defendant post a security deposit or bond.

"(4) If a security deposit or bond has been posted in accordance with subsection (3) of this section, and the trial in the action is continued at a later date, any order of continuance shall require the defendant to post an additional security deposit or bond in an amount determined by the court that shall be sufficient to repay all additional reasonable costs anticipated to be incurred by the petitioner in caring for the animal until the new date of trial.

"(5) If a security deposit or bond has been posted in accordance with subsection (4) of this section, the petitioner may draw from that security deposit or bond the actual reasonable costs incurred by the petitioner in caring for the impounded animal from the date of initial impoundment to the date of final disposition of the animal in the criminal action.

"(6) The provisions of this section are in addition to, and not in lieu of, the provisions of ORS 167.350."

[5] This opinion should not be understood to assert that ORS 167.347 is unconstitutional on its face. That statute can be constitutionally applied, but that did not occur here.

States Constitution, and there is no reason to believe that the drafters of the Oregon Constitution had any different understanding when they prohibited excessive fines in section 16 than the understanding of the drafters of the Eighth Amendment.[6] *See* Carey, *The Oregon Constitution* 28 (1926). Because the analysis under the two constitutional provisions appears to be identical, I would decide this case, if possible, under Article I, section 16, *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983); *see also City of Portland v. 1985 Porsche 944*, 143 Or App 492, 494 n 3, 924 P2d 334 (1996), *rev den* 325 Or 80 (1997), but in accordance with United States Supreme Court precedent.

The Eighth Amendment's excessive fines clause is not limited in applicability to criminal cases, although it clearly applies to excessive criminal penalties. *Austin v. United States*, 509 US 602, 608-09, 113 S Ct 2801, 125 L Ed 2d 488 (1993) ("Some provisions of the Bill of Rights are expressly limited to criminal cases. * * * The text of the Eighth Amendment includes no similar limitation. * * * Nor does the history of the Eighth Amendment require such a limitation."). *See also Umatilla County v. $18,005 in U.S. Currency*, 142 Or App 513, 921 P2d 426, *rev den* 324 Or 395 (1996). Thus, as the *Austin* court stated, "The question is not * * * whether forfeiture * * * is civil or criminal, but rather whether it is punishment." *Austin*, 509 US at 610.

Moreover, the "civil" or "criminal" nomenclature used in a statute is not dispositive as to whether a penalty provided by statute constitutes punishment, although it is the beginning point to discern legislative intent. *Hudson v. U.S.*, 522 US 93, 99, 118 S Ct 488, 139 L Ed 2d 450 (1997). The *Hudson* Court explained:

"Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. *Helvering* [*v. Mitchell*, 303 US 391, 399, 58 S Ct 630, 82 L Ed 917 (1938),] *supra* at 399. A court must first ask whether the

---

[6] Oregon's Article I, section 16, was adopted from and is identical to the Indiana excessive fines provision. The Indiana Supreme Court, in recognition of the similarities between Article I, section 16, of the Indiana Constitution, and the Eighth Amendment, has concluded that Indiana's section 16 requires no more and no less than the Eighth Amendment. *Norris v. State*, 271 Ind 568, 394 NE 2d 144 (1979).

legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' [*U.S. v.*] *Ward,* 448 US [242, 100 S Ct 2636, 65 L Ed 2d 742 (1980)] at 248. Even in those cases whether the legislature 'has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so *punitive either in purpose or effect,' id.,* at 248-249, as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty[.]' " *Hudson,* 522 US at 99 (some citations omitted).

Accordingly, the analysis begins with the consideration of the purpose and effect of the statutory scheme under which the trial court issued its order. ORS 167.347 (1999) provides that, when a criminal action charges the violation of ORS 167.310 to ORS 167.340, the custodian of seized animals may file a petition *in the criminal action* requesting that the court order forfeiture before the final disposition of the criminal charge. Defendant was charged with the violation of ORS 167.330, thus triggering the state's right to recover under ORS 167.347 (1999). Upon the filing of such a petition, the court must hold a hearing, as occurred in this case. At the hearing, the petitioner has the burden of establishing probable cause, a burden of proof required in other kinds of criminal proceedings, to believe that one of the crimes enumerated in the statute has been committed. If the court finds that the petitioner has met that standard, forfeiture is authorized unless the defendant posts a bond or security deposit sufficient to repay all reasonable costs incurred and anticipated to be incurred in the care of the seized animals "from the date of initial impoundment to the date of trial." ORS 167.347(3) (1999). In addition, ORS 167.350 (1999) provides that the court may impose, as part of the sentence, an order to forfeit the animals so that the costs of care can be repaid in the event that the defendant is convicted. The statutory scheme contains no mechanism for a refund of the excess value, if any, after a conviction or an acquittal. *See* ORS 167.347(5) (1999).

The first noteworthy features of ORS 167.347 (1999) under an Article I, section 16, inquiry are that the forfeiture proceeding under the statute is triggered by a criminal prosecution and requires a showing of probable cause before a forfeiture can be ordered. However, it does not appear from the

text or context of the statute that the legislature had a punitive purpose in enacting the statute. Rather, the statute has more of a "civil" quality in that it provides compensation for services rendered. If the statute is applied in such a manner that the value of the property forfeited is proportional to the cost incurred by the care provider, no "punishment" occurs. However, a statute can be punitive either because it has that purpose or because it has that effect. *Hudson*, 522 US at 99. A statute is punitive in effect, if, despite a remedial purpose, it authorizes a remedy that exceeds what is required to achieve the remedial purpose.

Civil statutes, through their effect, can implicate the "excessive fines" clauses in two ways. They can fall into a category of statutes that provide for "civil forfeiture," or they can impose "civil penalties." *United States v. Ursery*, 518 US 267, 116 S Ct 2135, 135 L Ed 2d 549 (1996).[7] Civil forfeiture statutes are "designed primarily to confiscate property that has been used in violation of the law, and to require disgorgement of the fruits of illegal conduct." *Ursery*, 518 US at 284. An example is a statute authorizing the forfeiture of a vehicle used in illegal activity. *See, e.g.*, ORS 133.460 (allowing forfeiture of conveyances used unlawfully to conceal or transport stolen property); *Bennis v. Michigan*, 516 US 442, 116 S Ct 994, 134 L Ed 2d 68 (1996). Civil forfeiture statutes are not subject to the same kind of proportionality analysis that civil penalties are, because,

"though it may be possible to quantify the value of the property forfeited, it is virtually impossible to quantify, even

---

[7] In *Ursery,* the Supreme Court explained,

"The narrow focus of [*United States v.*] *Halper*[, 490 US 435, 109 S Ct 1892, 104 L Ed 2d 487 (1989),] followed from the distinction that we have drawn historically between civil forfeiture and civil penalties. Since at least *Various Items [of Personal Property v. United States*, 282 US 577, 51 S Ct 282, 75 L Ed 558 (1931)], we have distinguished civil penalties such as fines from civil forfeiture proceedings that are *in rem*.

"* * * * *

"While a 'civil action to recover penalties, is punitive in character,' and much like a criminal prosecution in that 'it is the wrongdoer in person who is proceeded against. . . and punished,' in an *in rem* forfeiture proceeding, "it is the property which is proceeded against, and by resort to a legal fiction, held guilty and condemned." *Ursery,* 518 US at 283.

approximately, the nonpunitive purposes served by a particular civil forfeiture. Hence, it is practically difficult to determine whether a particular forfeiture bears no rational relationship to the nonpunitive purposes of that forfeiture." *Ursery*, 518 US at 284.

On the other hand, statutes providing for civil penalties are "designed as a rough form of 'liquidated damages' for the harm suffered by the Government as a result of a defendant's conduct." *Ursery*, 518 US at 283-84. An example of such a statute is one that provides for a fixed penalty of $2,000 for every instance of defrauding the government by purchasing cars at a discount that were intended to be purchased only by veterans. *Rex Trailer Co. v. United States*, 350 US 148, 154, 76 S Ct 219, 100 L Ed 149 (1956). *See also* ORS 809.715 (allowing impoundment of an uninsured vehicle and requiring payment of the costs of towing and storage before release of the vehicle). Civil penalties are subject to "proportionality analysis," because their nonpunitive purposes can be defined and quantified, and then compared to the actual penalty imposed. *Ursery*, 518 US at 283; *see also $18,005 in U.S. Currency*, 142 Or App at 516-17.

As to the test for proportionality of a civil penalty, the *Ursery* Court said:

> "Whether a 'fixed-penalty-provision' that seeks to compensate the Government for harm it has suffered is 'so extreme' and 'so divorced' from the penalty's nonpunitive purpose of compensating the Government as to be a punishment may be determined by balancing the Government's harm against the size of the penalty." 518 US at 284.

I would adopt that test for purposes of Article I, section 16.[8] The forfeiture of the animals is not the type of *in rem* civil *forfeiture* of the implements or proceeds of a crime that the court described as "impossible to qualify" in *Ursery*, 518 US at 284. Rather, it is more akin to a civil *penalty* statute, "designed as a rough form of liquidated damages." *Id.* at 283-84.[9] I would

---

[8] This test for determining whether a sanction is "punishment" is used in both double jeopardy cases (where the inquiry is whether the sanction constitutes a second punishment), and in excessive fines cases. *See, e.g., Ursery*, 518 US at 284 (double jeopardy); *Alexander v. United States*, 509 US 544, 113 S Ct 2766, 125 L Ed 2d 441 (1993) (excessive fines).

[9] Judge Armstrong, in his concurring opinion, asserts that "the problem [with my analysis] is that ORS 167.347 (1999) is not [a civil forfeiture] statute." 181 Or

hold that ORS 167.347 (1999) cannot constitutionally be applied to authorize a forfeiture in an amount that is disproportionate to the harm suffered by the state or its agents. The amount of the forfeiture must be commensurate with the statute's purpose of reimbursing the care provider for the established costs of the animals' care.

The trial court's order of forfeiture resulted in the humane society obtaining, through the power of the state, as much as $15,000 in value without establishing any more than $2,700 in costs. Without further evidence before it, the trial court could not constitutionally impose a forfeiture that benefitted the government in that amount under Article I, section 16, when the cost of care amounted to $2,700. To the extent that the forfeited amount exceeded the amount required to compensate the state for its expenditures on behalf of the animals, it was an excessive fine. Accordingly, this court should be required to vacate the order of forfeiture and remand to the trial court.

One additional concern presented by the facts of this case is that, had defendant paid the $2,700 bond, he could have avoided the forfeiture of all of his animals. The trial court expressly found that he had the financial ability to post the bond, and there is evidence to support that finding. The question is whether defendant's failure to post a bond operates to defeat his claim that the forfeiture was excessive. I would conclude that it does not for the reasons that follow. When faced with the court's order to post a bond or suffer the consequences of a forfeiture, defendant was required to make an election. He could convert his other assets to cash and post the bond, or he could permit the value of the impounded animals to be applied against the $2,700 obligation. By failing to post the bond, defendant waived his property interests in his animals to the extent of his $2,700 obligation. However, he

---

App at 68-69 (Armstrong, J., concurring). That is exactly my point—as applied here, it is a *civil penalty* statute. *See Ursery*, 518 US at 283-84 (contrasting the purposes and methods of evaluating civil penalty statutes and civil forfeiture statutes). At the risk of redundancy, the statute is *not* "designed primarily to confiscate property that has been used in violation of the law, and to require disgorgement of the fruits of illegal conduct." *Ursery*, 518 US at 284. Instead, it is "designed as a rough form of 'liquidated damages' for the harm suffered by" the humane society. *Ursery*, 518 US at 283-84. As such, the statute is subject to proportionality analysis in a way that civil *forfeiture* statutes are not.

cannot be deemed to have waived his ownership interests beyond that amount. To the contrary, he told the trial court in both of his motions that the court's order forfeiting his interest in the impounded animals violated his Article I, section 16, rights protecting him against the imposition of an excessive penalty.

Pursuant to the above analysis, the order forfeiting all of defendant's animals should be vacated because it violates Article I, section 16, of the Oregon Constitution. This case should be remanded to the trial court to hold the hearing that it apparently intended to hold, but never did before it entered the order on appeal. The trial court should also on remand consider an appropriate remedy commensurate with defendant's constitutional rights under Article I, section 16, and in light of the fact that the value of the forfeited animals may be disproportionate to the trial court's finding of the cost of care provided to the animals from the date of initial impoundment to the date of trial.

For the above reasons, I dissent.