Argued and submitted November 16, 2018, affirmed May 6, petition for review allowed August 27, 2020 (366 Or 825)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH LAWRENCE HERSHEY,
*Defendant-Appellant.*

KLAMATH COUNTY,
a political subdivision of the State of Oregon,
*Petitioner-Respondent,*

*v.*

KENNETH LAWRENCE HERSHEY,
*Respondent-Appellant.*

Klamath County Circuit Court
17CR66503; A166962

466 P3d 987

Respondent appeals an order of forfeiture entered after he failed to post bond for the cost of the care and treatment for his animals that were impounded pending his criminal trial. Respondent argues that because forfeiture proceedings were tried to a jury at the time the constitution was adopted, under Article I, section 17, of the Oregon Constitution, he was entitled to a jury trial before those animals could be forfeited to the animal care agency that has been caring for them. *Held*: The trial court did not err when it denied respondent's request for a jury trial. The proceeding under ORS 167.347 is not the kind of forfeiture proceeding that existed at the time of the adoption of Article I, section 17, and it does not involve the kinds of determinations that are typically made by a jury. Article I, section 17, does not provide a jury trial right in that proceeding.

Affirmed.

Andrea M. Janney, Judge.

Julian Marrs argued the cause and filed the briefs for appellant.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent State of Oregon. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

No appearance for respondent Klamath County.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Affirmed.

Shorr, J., dissenting.

**TOOKEY, J.**

Respondent[1] appeals an order of forfeiture, entered after he failed to post a $75,000 bond for the cost of care and treatment for his animals, which were impounded pending his criminal trial. ORS 167.347.[2] Respondent argues that he was entitled under Article I, section 17, of the Oregon Constitution to a jury trial on the forfeiture petition. The trial court concluded that an ORS 167.347 claim is not one that gives rise to a jury-trial right under Article I, section 17. We agree with the trial court and, therefore, affirm.

## I.   BACKGROUND

We review the denial of respondent's motion for jury trial on the petition for forfeiture under ORS 167.347[3] for errors of law. Here, the facts are primarily procedural, and they are undisputed.

---

[1] We identify the parties by their designations below in the petition for forfeiture proceeding, which is the matter on appeal. Klamath County (the county) was the petitioner in that proceeding, represented by the District Attorney, and Kenneth Hershey was the respondent. The state is also a named party on appeal and filed a brief.

[2] We quote the statute in full in later discussion. 304 Or App 64-66. Here, we quote the portions most relevant to our explanation of the procedural history and background.

"(1)(a)  If an animal is impounded pursuant to ORS 167.345 and is being held by a county animal shelter or other animal care agency pending outcome of a criminal action[,] *** prior to the final disposition of the criminal action, the county or other animal care agency or, on behalf of the county or other animal care agency, the district attorney, may file a petition in the criminal action requesting that the court issue an order forfeiting the animal to the county or other animal care agency prior to the final disposition of the criminal action. ***

"*****

"(3) At a hearing *** the petitioner shall have the burden of establishing probable cause to believe that the animal was subjected to a violation of ORS 167.315 to 167.333 ***. The defendant or any other claimant shall have an opportunity to be heard before the court makes its final finding. If the court finds that probable cause exists, the court shall order immediate forfeiture of the animal to the petitioner, unless the defendant or any other claimant, within 72 hours of the hearing, posts a security deposit or bond with the court clerk in an amount determined by the court to be sufficient to repay all reasonable costs incurred, and anticipated to be incurred, by the petitioner in caring for the animal from the date of initial impoundment to the date of trial."

[3] The 2017 version of ORS 167.347 applies to this case. It has since been amended. Or Laws 2017, ch 279, § 1. Because the amendment has no bearing on our analysis, all references are to the current version of the statute.

In September 2017, Klamath County Animal Control impounded respondent's 22 dogs, seven chickens, and three horses, ORS 167.345(3), in connection with second-degree animal neglect charges against respondent, ORS 167.325. The animals were placed in the care of the Klamath County Animal Shelter and Klamath Large Animal Division, both animal shelters that are run by petitioner, Klamath County. Respondent was indicted on one count of felony second-degree animal neglect in connection with the 22 dogs, and two counts of misdemeanor second-degree animal neglect—one count for the seven chickens and one for the three horses.[4] ORS 167.325.

In December 2017, the district attorney, on behalf of Klamath County, filed a petition under ORS 167.347(1) for the forfeiture of the seized animals. The petition alleged that there was probable cause to believe that the impounded animals had been subjected to second-degree animal neglect and it alleged that the county had incurred expenses for the feeding, care, and veterinary treatment of the animals and that those expenses were "expected to be ongoing as the criminal case continues." Respondent filed a motion for a jury trial on the petition, arguing that Article I, section 17, provides a right to a jury trial in forfeiture proceedings. The county opposed the motion. The trial court concluded that respondent was not entitled to a jury trial under the statute or the constitution, and it denied the motion.

The trial court held a hearing and set a bond based on the amount of money expended by the county's animal care agencies, and the amount expected to be expended by the time of trial. When respondent did not post the bond within 72 hours, the trial court ordered the forfeiture of respondent's animals to the Klamath Humane Society. Respondent filed a notice of appeal and requested that the trial court stay the order of forfeiture pending appeal. The trial court granted the stay.

On appeal, respondent contends that the trial court erred by denying his request for a jury trial. He argues that

---

[4] Second-degree animal neglect is ordinarily a misdemeanor. ORS 167.325(2). It is elevated to a felony, however, when an "offense was part of a criminal episode involving 11 or more animals." ORS 167.325(3)(b). The animal-neglect count involving the 22 dogs was charged as a felony under that provision.

because the Supreme Court has previously held that there is a right to a jury trial in a forfeiture case, the same applies in this case. *See State v. Curran*, 291 Or 119, 132-33, 628 P2d 1198 (1981) (holding defendant was entitled to jury trial on forfeiture when statute required findings that vehicle was employed in transportation or concealment of contraband and that the use was by or with knowledge of the owner); *State v. 1920 Studebaker Touring Car*, 120 Or 254, 264, 251 P 701 (1926) (holding in statutory *in rem* forfeiture case that claimants or owners of the seized property were entitled to jury trial).

## II.   ANALYSIS

The issue on appeal is whether a claim under ORS 167.347 is one in which respondent is guaranteed a jury trial under Article I, section 17.[5] In analyzing that question, we first examine that constitutional provision and how Oregon courts have construed it—particularly, as to what types of claims would have been tried to a jury under common law at the time Oregon adopted its constitution or are "of like nature" to those claims. Then, we consider the nature of ORS 167.347 and its context to determine whether a claim under that statute is that type of claim. We conclude that it is not, because it is more akin to a lien foreclosure than a true forfeiture claim, and it involves determinations that were customarily tried to the court rather than a jury; hence, an ORS 167.347 claim is not a forfeiture claim for which the respondent has a jury-trial right under Article I, section 17.

Article I, section 17, provides, "In all civil cases the right of Trial by Jury shall remain inviolate."[6] The Supreme

---

[5] The parties are correct that ORS 167.347 itself does not provide such a right; it expressly provides for the court to make the required findings. Thus, the predicate for our constitutional analysis is satisfied. *See Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 414, 908 P2d 300 (1995), *modified on recons*, 325 Or 46, 932 P2d 1141 (1997) (first considering whether the legislature provided for a jury trial by statute, and only then considering whether the constitution provides that right); *see also M. K. F. v. Miramontes*, 352 Or 401, 404, 287 P3d 1045 (2012) (engaging in the same analysis).

[6] By its terms, Article I, section 17, applies to civil cases. Neither party disputes that this is a civil proceeding. The Supreme Court has previously held that a proceeding under ORS 167.347 is a "special statutory proceeding" that is separate from the criminal case.

Court has explained that Article I, section 17, "guarantees the right to a trial by a jury (as opposed to a trial by a judge) in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 and in cases of like nature."[7] *Horton v. OHSU*, 359 Or 168, 243, 376 P3d 998 (2016).

The Supreme Court has delineated two separate analytical categories for purposes of our Article I, section 17, analysis: The first category is made up of civil actions that existed "when the Oregon Constitution was adopted in 1857," and the second consists of cases that did not exist in 1857 but came into existence later. *Id*.; *see McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 279, 193 P3d 9 (2008) ("The right to a jury trial * * * does not extend to cases that would have been tried to an equity or an admiralty court in 1859."); *Horton*, 359 Or at 226 (summarizing *M. K. F. v. Miramontes*, 352 Or 401, 404, 287 P3d 1045 (2012), as holding that the "state constitutional jury trial right extends to new causes of action that are 'of like nature' to claims and defenses that would have been tried to a jury in 1857").

For claims that are within the first category, the analytical path requires determining whether the claim existed, and the "right to a jury trial was customary" for that claim "at the time the Oregon Constitution was adopted." *Horton*, 359 Or at 173. If a claim of that kind was customarily tried to a jury at that time, then Article I, section 17, preserves that right. *Studebaker*, 120 Or at 259 ("The right of trial by jury, guaranteed by the Constitution of this state,

---

"[I]n an appeal from a final disposition in the particular kind of forfeiture proceeding that occurs pursuant to ORS 167.347, the 'cause' being appealed is the special statutory proceeding. The criminal prosecution is not implicated in that appeal, and the appeal does not deprive the trial court of jurisdiction to proceed to trial on the criminal matter."

*State v. Branstetter*, 332 Or 389, 403, 29 P3d 1121 (2001). That is also the reason why the order at issue is appealable even though there has not been a judgment entered in the criminal case—the proceeding under ORS 167.347 is separate from the criminal case. *Branstetter*, 332 Or at 403.

[7] Article VII (Amended), section 3, provides the right to a jury trial in "actions at law, where the value in controversy shall exceed $750." That provision was adopted in 1910. *Miramontes*, 352 Or at 408 n 5. Respondent has not made any argument concerning application of that provision to this proceeding. Accordingly, in this case we express no opinion related to that provision.

embraces every case where it existed before the adoption of the Constitution[.]"). If the current claim is one that existed at the time of the adoption of the constitution, and a jury trial was not customary at the time, then no constitutional right to a jury trial was created for it with the adoption of Article I, section 17: "The right to a jury trial * * * does not extend to cases that would have been tried to an equity or an admiralty court in 1859."[8] *McDowell Welding & Pipefitting*, 345 Or at 279.

Respondent argues that this is a forfeiture claim, and that forfeiture claims are ones in which there is a right to a jury trial, as established in *Studebaker*, 120 Or at 269, and in *Curran*, 291 Or at 132-33. He argues that *Studebaker* and *Curran* hold that, "as a blanket rule, Article I, section 17, requires a jury trial in forfeiture proceedings because those proceedings would have been tried to a jury in 1857." He also argues in the alternative, that, even if those cases do not establish a blanket rule, they at least establish that a jury trial is required in circumstances where a forfeiture statute permits forfeiture without a prior conviction in a criminal case, or where issues of fact pertinent to the forfeiture are not resolved in the criminal action before the forfeiture.

The state responds that respondent is incorrect in his underlying premise that this is, or is analogous to, a forfeiture claim at common law. The state argues that case law has established that a jury trial was customary at common law in a forfeiture claim in which property is forfeited as a penalty for its connection with a crime, but that this claim is not analogous to those kinds of claims. Rather, the state argues, this is a different type of claim, in which animal owners are given a choice between covering the costs of care for their impounded animals or allowing the animals to be forfeited to the animal care agency.

In reply, respondent argues that, even if the purpose of the statute is to ensure that an animal owner pays

---

[8] The Supreme Court has been inconsistent in its statements regarding which year—1857, when the voters adopted the constitution, or 1859, when it went into effect—is the correct date for evaluating whether a claim was customarily tried to a jury. For our purposes here, the difference is immaterial.

the cost of the animals' care during impoundment, the claim under ORS 167.347 is still a claim "of like nature" to a forfeiture claim, in which there was a jury-trial right.

We readily conclude that an ORS 167.347 claim, which is based on the animal care agency being able to recoup the costs it has expended for animals in the agency's care while they are impounded, and in which forfeiture occurs only when the animal owner fails to post the required bond, is not a claim that predated Article I, section 17. Accordingly, we focus on the parties' arguments concerning whether it is a claim of "like nature" to one that existed at the time Article I, section 17, was adopted, and in which a jury trial was customary. *Miramontes*, 352 Or at 409.

As respondent points out, the Supreme Court has held that a right to a jury trial is guaranteed for forfeiture claims. "Historically, the concept of a forfeiture is founded on the idea that a chattel attains some guilt in the commission of a criminal act." *Curran*, 291 Or at 127. "It cannot be doubted that a forfeiture of property for a prohibited act is a penalty for committing the act. It is so denominated by lexicographers, and is so treated in judicial decisions." *Studebaker*, 120 Or at 260 (citation and quotation marks omitted). In *Studebaker*, the *in rem* claim required proof that the vehicle had been

> "'used by or with the knowledge of the owner or the person operating or in charge thereof, in any unlawful bringing of intoxicating liquor into this state, or in the unlawful transportation of the same within this state, or in or on which intoxicating liquor unlawfully possessed is kept or concealed by or with the knowledge of such owner or person operating or in charge thereof[.]'"

*Id*. at 256 (quoting Or Laws 1923, ch 29). In *Curran*, the forfeiture claim required a predicate conviction. It also required the state to prove that "(1) the vehicle was employed in the unlawful transportation or concealment of controlled substances and that (2) such use was by or with the knowledge of the owner of the vehicle." 291 Or at 132. The court concluded that the defendant was entitled to a jury trial on those questions because the jury in the criminal trial had not resolved them. *Id*. at 133.

If a forfeiture under ORS 167.347 were like those cases, we would agree with respondent that he is entitled to a jury trial. But, an examination of ORS 167.347—its text, context, and legislative history—demonstrates why this type of forfeiture is very different.

Some additional procedural history of this case provides additional helpful context for our examination of the statute. Here, respondent's animals were impounded when police executed a search warrant, as permitted under ORS 167.345(2) when "there is probable cause to believe that any animal is being subjected to treatment in violation of ORS 167.315 to 167.333, 167.340, 167.355, 167.365 or 167.428."[9] ORS 167.345(2) provides that, if an officer has probable cause to believe that an animal is being subjected to, as relevant here, neglect under ORS 167.325, police may obtain a warrant or enter the premises by other lawful means and impound the animal. A court may order that the impounded animal be held "at any animal care facility in the state[,]" and the receiving facility "shall provide adequate food and water and may provide veterinary care." ORS 167.345(4)(a).

ORS 167.347 provides for forfeiture of impounded animals to the entity providing care for them, under specific circumstances. The full text of ORS 167.347 provides:

"(1)(a)  If an animal is impounded pursuant to ORS 167.345 and is being held by a county animal shelter or other animal care agency pending outcome of a criminal action charging a violation of ORS 167.315 to 167.333, 167.340, 167.355, 167.365 or 167.428, prior to the final disposition of the criminal action, the county or other animal care agency or, on behalf of the county or other animal care agency, the district attorney, may file a petition in the criminal action requesting that the court issue an order forfeiting the animal to the county or other animal care agency prior to the final disposition of the criminal action. The petitioner shall serve a true copy of the petition upon the defendant and, unless the district attorney has filed the petition on behalf of the county or other animal care agency, the district attorney.

_____

[9] Those statutes define various degrees of animal abuse and neglect, violation of an animal possession prohibition, sexual assault of an animal, animal abandonment, involvement in animal fighting, dogfighting, and cockfighting.

"(b)  A petition may be filed in the criminal action under paragraph (a) of this subsection concerning any animal impounded under ORS 167.345 and held pending the outcome of the criminal action, regardless of whether the specific animal is the subject of a criminal charge, or named in the charging instrument, in the criminal action.

"(2)(a)  Upon receipt of a petition pursuant to subsection (1) of this section, the court shall set a hearing on the petition. The hearing shall be conducted within 14 days after the filing of the petition, or as soon as practicable.

"(b)  To provide notice on any potential claimant who may have an interest in any animals impounded pursuant to ORS 167.345 and as an alternate form of service upon a defendant who cannot be personally served as required in subsection (1) of this section, a petitioner may publish notice of the filing of the petition, printed twice weekly for up to 14 consecutive days in a daily or weekly newspaper, as defined in ORS 193.010, published in the county in which the hearing is to be held or, if there is none, in a daily or weekly newspaper, as defined in ORS 193.010, generally circulated in the county in which the hearing is to be held. The notice of the filing of the petition required under this subsection shall contain a description of the impounded animal or animals, the name of the owner or reputed owner thereof, the location from which the animal or animals were impounded and the time and place of the hearing if the hearing has been set at the time of publication, or otherwise the name, address and phone number for the attorney for the petitioner, who shall upon request provide further details on the hearing date, place and time.

"(3)  At a hearing conducted pursuant to subsection (2) of this section, the petitioner shall have the burden of establishing probable cause to believe that the animal was subjected to a violation of ORS 167.315 to 167.333, 167.340, 167.355, 167.365 or 167.428. The defendant or any other claimant shall have an opportunity to be heard before the court makes its final finding. If the court finds that probable cause exists, the court shall order immediate forfeiture of the animal to the petitioner, unless the defendant or any other claimant, within 72 hours of the hearing, posts a security deposit or bond with the court clerk in an amount determined by the court to be sufficient to repay all reasonable costs incurred, and anticipated to be incurred, by the

petitioner in caring for the animal from the date of initial impoundment to the date of trial.

"(4)   If a security deposit or bond has been posted in accordance with subsection (3) of this section, and the trial in the action is continued at a later date, any order of continuance shall require the defendant or any other claimant to post an additional security deposit or bond in an amount determined by the court that shall be sufficient to repay all additional reasonable costs anticipated to be incurred by the petitioner in caring for the animal until the new date of trial.

"(5)   If a security deposit or bond has been posted in accordance with subsection (4) of this section, the petitioner may draw from that security deposit or bond the actual reasonable costs incurred by the petitioner in caring for any impounded animal from the date of initial impoundment to the date of final disposition of the animal in the related criminal action.

"(6)   The provisions of this section are in addition to, and not in lieu of, the provisions of ORS 167.350 and 167.435 and ORS chapters 87 and 88."

The animal care facility, or the county, on behalf of its animal shelters, may file a petition in the criminal case, after which the petitioner must prove at a hearing that the animals are in its care in connection with a listed offense, for which there was probable cause. If it proves those things, then the trial court shall set a bond "in an amount determined by the court to be sufficient to repay all reasonable costs incurred, and anticipated to be incurred, by the petitioner in caring for the animal from the date of initial impoundment to the date of trial." ORS 167.347(3). If the respondent does not post that bond within 72 hours, the trial court shall enter an order of forfeiture, forfeiting the animals to the care agency. *Id*.

"An obvious practical problem that arises when animals are impounded under ORS 167.345 is the need to pay for the food, water, and care that they receive." *State v. Branstetter*, 181 Or App 57, 63, 45 P3d 137 (2002) (Armstrong, J., concurring) (*Branstetter II*) (construing 1999 versions of ORS 167.347 and related statutes). The legislature dealt with that problem in two essentially parallel ways. First it

provided in ORS 87.159 that the animal care agency providing care and treatment for the animals would have a lien on the animals, and the ability to foreclose the lien, and second, it provided the means for an animal care agency to seek a bond for the costs incurred for the animals' care by providing the procedure in ORS 167.347 for the court to impose a bond for those expenses on the animals' owner. *Id*. at 63-64. The petitioner must prove that the animals were impounded with probable cause in order to show that the animals are lawfully in the animal care agency's custody under ORS 167.345. That probable cause determination has no effect on the criminal case against the owner, as the forfeiture proceeding is entirely separate from the criminal prosecution. *See State v. Branstetter*, 332 Or 389, 398-99, 29 P3d 1121 (2001) (*Branstetter I*).

Whether the owner is innocent or guilty of the criminal charge is of no consequence to a proceeding under ORS 167.347. *Branstetter II*, 181 Or App at 64. That is so because the purpose of the claim is not to punish owners, but to place on the owners the costs incurred by a third party in caring for the animals. Those costs are incurred whether or not the owners are guilty, and they are costs that the owner has been relieved of paying while the animals are out of the owners' care. ORS 167.347 also provides that its provisions are in addition to the criminal sanctions provided in ORS 167.350, which authorizes forfeiture of animals as a sanction upon conviction. ORS 167.347(5). "Thus, although a proceeding under ORS 167.347 takes place in the criminal action, it does not arise from that action, is entirely separate from it, and, necessarily, is not governed by the rules that apply to criminal prosecutions." *Branstetter II*, 181 Or App at 64.

Relatedly, as mentioned, in ORS 87.159 the legislature gave animal care agencies a lien on impounded animals to recover costs incurred for their care. In 2013 the legislature amended that statute and ORS 167.347 at the same time, as part of the same bill. Or Laws 2013, ch 719, §§ 7, 9. That statute provides relevant context to ORS 167.347. In ORS 87.159, the legislature provided a way for any person with an ownership interest in impounded animals on which

an animal care agency had a lien to initiate proceedings "demanding a hearing before the circuit court" to challenge whether there is probable cause to "justify[] the impoundment that resulted in the lien attaching," or "the amount of the charges associated with that lien." ORS 87.159(2)(b) provides for an essentially identical hearing to the one provided in ORS 167.347, in which the animal care agency has the burden of demonstrating that the impoundment was based on probable cause, and that the lien amount claimed accurately reflects the reasonable charges authorized and accruing under ORS 87.159(1). If the court finds in favor of the animal care agency, then it "shall deny the petition, award reasonable attorney fees to" the animal care agency, "and direct the foreclosure to proceed." If the court finds that the animals were placed in the animal care agency's care without probable cause, "then the court may enter an order striking the lien created under subsection (1) of this section and may, but only if a final judgment is entered in the defendant's favor in the criminal case related to the impoundment under ORS 167.347, order an impounded animal returned to its lawful owner." ORS 87.159(2)(c)(C). The legislature provided in ORS 167.347 an alternative way to achieve essentially the same result, more quickly and more efficiently within the framework of the criminal case when such a case is ongoing.

In 2013, the legislature amended ORS 167.347 and many other provisions of the animal welfare statutes, including ORS 87.159.[10] At that time, it enacted ORS 167.305, which "finds and declares" that:

---

[10] In 2013, the legislature amended eight animal welfare-related statutes in Senate Bill (SB) 6. Or Laws 2013, ch 719. The primary motivation for the bill was described in testimony by Senate President Peter Courtney, who introduced the bill along with Senator Floyd Prosanski. President Courtney testified before the Senate Judiciary Committee that he read one day in The Oregonian that police had found 149 dogs "starving to death in a warehouse in Brooks," Oregon. Exhibit 1, Senate Committee on Judiciary, SB 6, Mar 25, 2013 (statement of Senate President Peter Courtney). He learned that the Humane Society in Portland had taken in all 149 dogs, and that "it could be an entire year before these dogs would be legally ready for adoption." *Id*. President Courtney told his staff the next day that he "wanted to do a bill that cracks down on these criminals, allows police to get in the door sooner, and gets these animals into loving homes faster. That is the bill before you today." *Id*. The bill included changes to the lien and foreclosure statute related to the costs of care for impounded animals, provisions listing aggravating circumstances that elevate misdemeanor animal abuse and neglect

"(1)   Animals are sentient beings capable of experiencing pain, stress and fear;

"(2)   Animals should be cared for in ways that minimize pain, stress, fear and suffering;

"(3)   The suffering of animals can be mitigated by expediting the disposition of abused animals that would otherwise languish in cages while their defendant owners await trial;

"(4)   The suffering of animals at the hands of unlicensed animal rescue organizations that are unable to provide sufficient food and care for the animals can be reduced by requiring such organizations to comply with regulations;

"(5)   The State of Oregon has an interest in facilitating the mitigation of costs of care incurred by a government agency, a humane investigation agency or its agent or a person that provides treatment for impounded animals;

"(6)   A government agency, a humane investigation agency or its agent or a person that provides care and treatment for impounded or seized animals:

"(a)   Has an interest in mitigating the costs of the care and treatment in order to ensure the swift and thorough rehabilitation of the animals; and

"(b)   May mitigate the costs of the care and treatment through funding that is separate from, and in addition to, any recovery of reasonable costs that a court orders a defendant to pay while a forfeiture proceeding is pending or subsequent to a conviction;

"(7)   Use of preconviction civil remedies is not an affront to the presumption of innocence; and

"(8)   Amendments to current law are needed to ensure that interested parties are afforded adequate notice and an opportunity to be heard and thus cannot unduly delay or impede animal lien foreclosure and preconviction forfeiture processes through unfounded due process claims."

---

offenses to felonies, provisions broadening the prohibition on possession of animals for persons convicted of animal abuse and neglect, requirements for animal shelters and rescues to be licensed, as well as changes to the preconviction forfeiture law at issue here, ORS 167.347.

Both ORS 167.347 and the legislature's findings and declarations in ORS 167.305 refer to "forfeiture," and respondent seizes on that word to argue that a claim under ORS 167.347 constitutes a forfeiture proceeding like in *Curran* and *Studebaker*. The state, however, emphasizes the parallels between the ORS 167.347 proceeding—one in which the forfeiture occurs only as a consequence of a failure to post the bond set by the court—and a lien foreclosure proceeding.

There are important differences between lien foreclosure and a forfeiture. For one, in a lien foreclosure, the property to which the lien is attached is typically sold and the proceeds are applied to the amount of the lien. ORS 167.347 is not a perfect match with a lien foreclosure; if the respondent does not post the required bond, the animals are transferred to the animal care agency, not sold as in an ordinary lien foreclosure situation. Nonetheless, it is much closer to lien foreclosure than a forfeiture claim in light of the text, context, and legislative history, which strongly indicate that the legislature sought to create, not a punitive forfeiture claim, but an equitable proceeding in which an animal care agency is either assured of recovering its expenses when a respondent posts the required bond, or in which it can mitigate its expenses and mitigate the suffering of animals that may have already suffered abuse or neglect. *See* ORS 167.305(3), (5), (6).

It is well established under the current animal welfare statutes that animals are the victims of animal abuse and neglect crimes. *Cf. State v. Crow*, 294 Or App 88, 90-101, 429 P3d 1053 (2018), *rev den*, 364 Or 294 (2019) (observing in construing related statute that "the legislature's focus was on the development of a comprehensive statutory scheme [of animal cruelty laws] to protect individual animals from abuse and neglect, *** all of which are predicated on preventing the suffering of animals, rejecting the defendant's argument that the public is the single collective victim of the defendant's unlawful possession of animals, and concluding that, for purposes of merger, the legislature intended each unlawfully possessed animal to be a separate victim"); *State v. Hess*, 273 Or App 26, 35, 359 P3d 288, *rev den*, 358 Or 529 (2015) (concluding that, for purposes of merger, animals are the victims of animal neglect, and, thus, the trial court did not err in entering

convictions on all 45 of the animal-neglect counts). That context—and particularly the findings and declarations in ORS 167.305—are inconsistent with the view that ORS 167.347 treats an animal victim like chattel that is forfeited by criminal conduct—let alone chattel that "attains some guilt in the commission of the crime." *Curran*, 291 Or at 127.

On the latter point, although it is conceivable that an animal could be employed to facilitate the commission of the crime or obtained from the unlawful proceeds of the commission of a crime, that was not true of the animals in this case nor does that uncommon circumstance appear to be what the statutory scheme as a whole and ORS 167.347 in particular were intended to address. *Cf. Curran*, 291 Or 119 (involving controlled substances).

In any event, the legislature considered animals to be the victims of the underlying crime and "sentient beings capable of experiencing pain, stress, and fear." That meaningfully distinguishes the animals that are the subjects of a petition under ORS 167.347 from chattels that can attain "guilt" in the commission of a crime. ORS 167.305; *see Crow*, 294 Or App at 91. The purpose of the proceeding that the legislature created in ORS 167.347 is to equitably compensate for the obligation to care for the animals, not to punish a defendant by taking chattel that was employed to facilitate the commission of a crime or by taking the defendant's ill-gotten gains.

In sum, a proceeding under ORS 167.347 is not exactly a lien foreclosure, but its overall nature bears a greater resemblance to lien foreclosure than to any forfeiture claim that would have existed in Oregon in 1859. The ORS 167.347 proceeding does not require a factual finding—customarily tried to a jury—that the property in question was "guilty" in some way. Instead, the required determinations are the kind of legal questions and equitable determinations that are customarily made by the court: whether there was probable cause to believe that the animal was subjected to a violation of the animal welfare laws, and the amount of a bond for the costs already incurred and reasonable costs expected to be incurred by the time of trial by the animal care agency.

Although we agree with the dissent that the issue is close, we ultimately conclude, based on the foregoing analysis, that this claim is most akin to a lien foreclosure claim in general, which was not entitled to a jury trial at the time of the adoption of the Oregon Constitution, and it does not include the kind of fact finding that would customarily be tried to a jury. "A lien action is presumptively equitable and is to be tried by the court." 53 CJS Liens § 52 (2020). Suits pertaining to liens were generally heard by courts sitting in equity at the time of the adoption of Article I, section 17.[11] *See, e.g.*, *Brown v. Gilman*, 17 US 255, 264, 4 L Ed 564 (1819) ("It is not necessary to prove affirmatively the intent to retain a lien. It is a natural equity[.]"); *Sleight v. Read*, 1854 WL 5392 (NY Sup Ct), *aff'd*, 1854 WL 5754 (NY Gen Term 1854) ("On a foreclosure, the surplus moneys brought into court are subject to its jurisdiction as a court of equity[.]"); *Clarke v. Southwick*, 5 F Cas 981, 981 (Cir Court, Dist of Mass 1852) ("This is a bill in equity, to establish and enforce a lien on certain mills, lands, and their appurtenances[.]"); *see also Occidental Realty Co. v. Palmer*, 102 NYS 648, 650, 117 AD 505, 507 (NY App Div 1907), *aff'd*, 192 NY 588, 85 NE 1113 (1908) (noting that specific type of lien was firmly established in England "more than half a century ago, *** and that equity will enforce it"). The fact that the legislature chose forfeiture as a consequence of failing to post a required bond does not make this proceeding "of like nature" to a forfeiture claim that would have been tried to a jury at common law.

This is not the kind of claim for which there is a right, under Article I, section 17, to a jury trial.

Affirmed.

---

[11] It appears that actions on liens established by statute were either heard in courts of equity or as provided in the statute. It does not appear that lien statutes established that statutory lien foreclosure actions were customarily heard by juries. *See, e.g.*, *Steamer Gazelle v. Lake*, 1 Or 119, 120-21 (1854) ("If the new statute substituted no other statutory remedy for the one abolished, the party would then be compelled to resort to his common law remedy, and proceed to enforce his claim by an action at law against the persons on whose account the materials were furnished, or by bill in equity to subject the boat to the payment of the demand. But the new statute gives a specific remedy."). Here, the statute does not provide for a jury.

**SHORR, J.,** dissenting.

I respectfully dissent from the majority opinion primarily because I disagree with the majority's conclusion that the procedure in ORS 167.347, addressing the statutory forfeiture of an impounded animal, is "more akin to a lien foreclosure than a true forfeiture" proceeding. 304 Or App at 60. Although the issue is close, I would conclude that the procedure is closer to what the legislature labelled it, a forfeiture, rather than the foreclosure of a lien. *See* ORS 167.347(3) (providing that the court "shall order immediate forfeiture of the animal"). I reach that conclusion primarily because a respondent to a forfeiture proceeding under ORS 167.347 loses the animal entirely upon a finding of probable cause and the failure to post a bond. Unlike a typical lien foreclosure procedure, the respondent has no right to any repayment should the value of the impounded animal exceed the cost of the care incurred by the county or animal care agency. That process and resulting penalty makes the procedure more akin to a forfeiture than a foreclosure. Because, as the majority correctly points out, a party was entitled at the time of the adoption of the Oregon Constitution to a jury trial on a forfeiture proceeding, I would hold that respondent is entitled to a jury trial under Article I, section 17, of the Oregon Constitution before the forfeiture of his animals. *State v. 1920 Studebaker Touring Car et al.*, 120 Or 254, 260, 251 P 701 (1926).

To frame this short dissent, it is important to define the terms forfeiture and foreclosure. These are legal terms of art. As the majority notes, a forfeiture is a penalty of loss of property for having committed a particular act. *Id.* It is the "divestiture of property *without compensation*" and a "loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." *Black's Law Dictionary* 792 (11th ed 2019) (emphasis added). Here, respondent's animals were forfeited based on (1) a finding that there was probable cause to believe that respondent committed a crime in violation of ORS 167.325 (animal neglect in the second degree) and (2) respondent's failure to post a $75,000 bond for the animals' past and future care.

A foreclosure, by contrast, is a "legal proceeding to terminate a mortgagor's interest in property, instituted by

the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." *Black's* at 789. The mortgagee's security in the property is a lien. Although others besides mortgagees can hold a lien, a lien, in general, is a "security right given to a person to sell or seize the collateral subject to the lien." *Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 153, 864 P2d 350 (1993), *adh'd to as modified on recons*, 318 Or 327, 866 P2d 463 (1994) (internal citation and quotation marks omitted). There are a number of statutory liens, including a construction lien, innkeeper's lien, attorney's lien, among many others. *See* ORS chapter 87 (describing statutory liens). As the majority observes, there is also an existing statutory lien for the care of impounded animals under ORS 87.159, which provides for the potential sale of the animal through a separate foreclosure proceeding.

What distinguishes a foreclosure from a forfeiture is that, in a foreclosure, there is a process for the distribution of the proceeds from the sale of the chattel, including for the potential return of any excess money to the debtor after certain payments, including to reimburse the lienholder, have been made. The separate foreclosure process for a statutory lien under ORS 87.159 on impounded animals provides that proceeds from the sale of the animals shall be paid in the following order: (1) to cover the cost of the sale of the animal, (2) to repay the indebtedness of the lienholder, (3) to satisfy any subordinate liens, and (4) to the county treasurer, who can then disburse any remaining amount to the original debtor upon the debtor's timely filing of a claim. *See* ORS 87.206 (providing for disposition of proceeds of foreclosure sale, including for a foreclosure sale of animals subject to a statutory lien under ORS 87.159). Thus, a person who loses an animal through the foreclosure process has the opportunity to claim any remaining value if the sale of the animal results in funds exceeding the cost of the debt incurred in the care and sale of such animal. In a forfeiture process, the animal is forfeited entirely and there is no right to recover any excess value from any sale of the animal under ORS 167.347.

What are we to make of that distinction? The most reasonable inference is that, when animals are forfeited

under ORS 167.347 based on a finding of probable cause to believe that a crime has occurred, the loss of the animals without an opportunity by the owner to recover any remaining value is a penalty in the form of a forfeiture of the animals and not a foreclosure process. The respondent, who is also a criminal defendant in a parallel criminal proceeding, will suffer the complete forfeiture of his animals—with no apparent right to compensation of their equity as in a foreclosure—upon a failure to post a bond and a court's finding of probable cause. This may occur even if the respondent-defendant is later *acquitted* of the underlying charge of animal neglect. If a particular respondent-defendant is later found beyond a reasonable doubt to have committed animal neglect, the prior forfeiture of the animal still serves as a penalty.[1] That meets the definition of a forfeiture, namely, a "divestiture of property without compensation" and a "loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." *Black's* at 792. The forfeiture process in ORS 167.347 is distinct from the foreclosure process in ORS 87.159. If anything, the existence of a separate foreclosure process in ORS 87.159 is context for the conclusion that the forfeiture proceeding in ORS 167.347 is something other than a foreclosure.

I acknowledge that courts, not jurors, are typically asked to determine whether there is probable cause to believe that a crime has been committed—albeit not generally, as here, at the conclusion of a proceeding. However, that is still a process of applying the law to facts. That is a process that jurors are capable of and that jurors do every day when applying other legal standards—for instance, "beyond a reasonable doubt" or a "preponderance of the evidence"—to the facts. I also acknowledge that this is not an exact fit with forfeiture's historical background outside or within the United States, but the process otherwise functions like a traditional forfeiture. As the majority points out, forfeiture, at least prior to its adoption in the United States,

---

[1] I would expect that, in many cases of proved animal neglect, it may be that the county or animal care agency's cost of caring for the seized animal exceeds the animal's ultimate economic value (without regard to the animal's intrinsic value as a living being). However, under the statute, the forfeiture process results in a complete loss of the animal regardless of the value of respondent's ownership.

was "founded on the idea that a chattel attains some guilt in the commission of a criminal act." *State v. Curran*, 291 Or 119, 127, 628 P2d 1198 (1981) (noting that the action for seizing property that caused death, a "deodand," was followed in English common law but was not carried over to the law of the United States).[2] I agree that forfeiture historically did not arise from the seizure and sale of chattel that was the alleged victim of the crime. Forfeiture has been used not only to penalize, but to make underlying crimes unprofitable, seize equipment needed to carry out crime, and allow law enforcement to recoup costs of investigating and prosecuting a crime. *Id*. at 127-28. Forfeiture in the United States has been traditionally used to seize criminal contraband or contraband *per se* and "derivative contraband," otherwise legal items used to carry out crime. *Id*. at 128.

       I also appreciate that animals are living beings different from other forms of property. The legislature recognized that and intended to speed the process for adoption of animals when there was probable cause to suspect that they had been abused. Nevertheless, that process still serves as a penalty on the owner through the forfeiture of the owner's property—based on a very low standard of proof and following a failure to post a bond—without a jury trial, a right that existed at the time of the adoption of the Oregon Constitution. Regardless of the legislative purpose, the effect of the statute is to penalize persons through a forfeiture of their property based on a finding that there was probable cause to believe that they violated criminal law. In addition, beyond the forfeiture process, the government has the existing option to seize the animals and proceed with the existing foreclosure process that is decided by the court.

       In sum, despite my agreements with the majority on the historical use of forfeiture and the legislature's recognition of animals as sentient beings different than other kinds of property, I disagree with the majority's conclusion that the forfeiture process under ORS 167.347 is more akin to foreclosure than forfeiture. There is a penalty applied in the forfeiture process under ORS 167.347 upon a person

_____

[2] I acknowledge that history even though it is difficult to understand how chattel ever attains "guilt."

having committed a particular act or, more accurately, based on a finding of probable cause that the person committed the act. That occurs even if the respondent-defendant is later acquitted of the alleged crime against an animal. As a result, I would conclude that the statutory forfeiture process in ORS 167.347 is closer to what the legislature named it, a forfeiture for which there traditionally was and is a jury right under Article I, section 17. *See M. K. F. v. Miramontes*, 352 Or 401, 413-14, 287 P3d 1045 (2012) (examining whether claim was of "like nature" to ones that were tried to a jury at the time Article I, section 17 was adopted); *Studebaker*, 120 Or at 260-61 (stating that "[t]here can be no doubt" that, at the time of the adoption of the Oregon Constitution, property could not be forfeited except in actions triable by jury). I therefore respectfully dissent.