Argued and submitted September 14, 2021, resubmitted January 25; decision of Court of Appeals and order of circuit court are affirmed August 11, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

KENNETH LAWRENCE HERSHEY,
*Petitioner on Review.*

KLAMATH COUNTY,
a political subdivision of the State of Oregon,
*Respondent on Review,*

*v.*

KENNETH LAWRENCE HERSHEY,
*Petitioner on Review.*

(CC 17CR66503) (CA A166962) (SC S067825)

515 P3d 899

After Klamath County Animal Control impounded Hershey's animals, the Klamath County district attorney filed a petition in the circuit court pursuant to ORS 167.347, asserting that there was probable cause to believe that the animals had been subjected to criminal mistreatment and seeking immediate forfeiture of the impounded animals or, in the alternative, the payment of a security deposit or bond to cover the costs of caring for the animals during the pendency of the related criminal proceeding. Hershey filed a motion for a jury trial on the petition, which the court denied. The court subsequently found probable cause of criminal mistreatment of the animals and ordered payment of a bond to cover the costs of their care. After Hershey failed to pay the bond, the court issued an order forfeiting the animals. Hershey appealed the court's order, arguing that, under Article I, section 17, of the Oregon Constitution, a party has a right to a jury in a proceeding brought under ORS 167.347. *Held*: A proceeding brought under ORS 167.347 does not involve a claim for relief that would have been tried to a jury at the time of the adoption of the Oregon Constitution, and, therefore, is not one to which the Article I, section 17, jury trial right applies.

The decision of the Court of Appeals and the order of the circuit court are affirmed.

On review from the Court of Appeals.*

Christopher L. Cauble, Cauble, Selvig, & Whittington, LLP, Grants Pass, argued the cause and filed the brief for petitioner on review.

_____

* Appeal from Klamath County Circuit Court, Andrea Janney, Judge. 304 Or App 56, 466 P3d 987 (2020).

Kirsten M. Naito, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review State of Oregon. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

No appearance on behalf of respondent on review Klamath County.

David B. Rosengard, Animal Legal Defense Fund, Portland, filed the brief for *amici curiae* Animal Legal Defense Fund and Oregon Humane Society.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

DUNCAN, J.

The decision of the Court of Appeals and the order of the circuit court are affirmed.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

**DUNCAN, J.**

This case involves a special statutory proceeding brought under ORS 167.347. As relevant here, that statute provides that, when an animal is being held by an animal care agency pending the outcome of a criminal action for mistreatment of the animal, a district attorney, acting on behalf of the animal care agency, may file a petition in the criminal action asking the circuit court to order the forfeiture of the animal unless the defendant in the criminal action (or another person with a claim to the animal) pays a security deposit or bond to cover the agency's costs of caring for the animal. The question presented here is whether, under Article I, section 17, of the Oregon Constitution, a party has a right to a jury trial in a proceeding brought under ORS 167.347.

The circuit court ruled that a party does not have such a right. The Court of Appeals affirmed, in a divided opinion. *State/Klamath County v. Hershey*, 304 Or App 56, 466 P3d 987 (2020). For the reasons explained below, we affirm.

The relevant facts are few and undisputed. In September 2017, Klamath County Animal Control impounded 22 dogs, three horses, and seven chickens from Hershey's property. The state subsequently charged Hershey with three counts of second-degree animal neglect, one count for each type of animal. ORS 167.325. In December 2017, the Klamath County district attorney filed a petition pursuant to ORS 167.347 on behalf of the county. In the petition, the district attorney asserted that (1) there was probable cause to believe that the animals had been subjected to treatment constituting second-degree animal neglect, (2) Hershey had been charged with three counts of that crime, and (3) the county had incurred expenses relating to the care of the animals and expected to continue to incur those expenses as the criminal action continued. Based on those asserted facts, the district attorney asked the circuit court

"for a judgment against [Hershey[1]] as follows:

---

[1] The petition refers to Hershey as "Defendant-Respondent" because he was both the defendant in the criminal action and the respondent in the action brought under ORS 167.347. For the sake of simplicity, we refer to Hershey by name.

> "1.  For the immediate forfeiture of the impounded animals and for such other relief as may be just and equitable; or
>
> "2.  In the alternative, requiring [Hershey] (or any other claimant) to post a security deposit or bond, within 72 hours of the hearing of this matter, in an amount sufficient to repay all reasonable costs incurred, and anticipated to be incurred, by the [county] in caring for the impounded animals from the date of the initial impoundment to the date of the trial in the underlying criminal matter."

In response, Hershey filed a motion for a jury trial on the district attorney's petition. The district attorney opposed Hershey's motion and, after a hearing, the circuit court denied it.

The circuit court then held a hearing on the district attorney's petition, at the conclusion of which the court made the findings required by ORS 167.347 and ordered that the animals be forfeited unless Hershey paid a $75,000 bond. Hershey did not pay the bond, and the court issued an order forfeiting the animals. Hershey then initiated this appeal.[2]

As mentioned, the Court of Appeals affirmed. *Hershey*, 304 Or App 56. On Hershey's petition, we allowed review to address whether a party has an Article I, section 17, right to a jury in a proceeding brought under ORS 167.347.

Article I, section 17, provides that "[i]n all civil cases the right of Trial by Jury shall remain inviolate." That provision "is not an enlargement, but a guarantee, of the right as it existed before the adoption of the constitution." *Raymond v. Flavel*, 27 Or 219, 230, 40 P 158 (1895). Article I, section 17, guarantees a jury trial in two categories of cases: (1) cases "in which the right to a jury trial was customary at the time the Oregon Constitution was adopted" in 1857 and (2) cases "of like nature." *Horton v. OHSU*, 359 Or 168, 173, 376 P3d 998 (2016); *accord State v. 1920 Studebaker Touring Car*

---

[2] In the underlying criminal case, Hershey entered an *Alford* plea to the charge based on the neglect of the dogs. The circuit court convicted him of that charge and, pursuant to a plea agreement, dismissed the other two charges. As a result of his conviction, Hershey is barred from owning dogs in Oregon, and, on review, challenges only the forfeiture of the horses and chickens.

*et al.*, 120 Or 254, 263, 251 P 701 (1926) ("[T]he constitutional right of trial by jury is not to be narrowly construed, and is not limited strictly to those cases in which it had existed before the adoption of the Constitution, but is to be extended to cases of like nature as they may hereafter arise.").

To determine whether the Article I, section 17, jury trial right extends to a particular claim, we must examine "the nature of the relief requested" to determine whether the particular "request for relief would have been tried to a court without a jury at common law or, instead, would have been tried to a jury." *Deep Photonics Corp. v. LaChapelle*, 368 Or 274, 280, 284, 491 P3d 60 (2021) (internal quotation marks and emphasis omitted). One indication that the request for relief would have been tried to a court without a jury is that the relief sought is equitable, as opposed to legal. *Id.* at 280; *see also M. K. F. v. Miramontes*, 352 Or 401, 416, 287 P3d 1045 (2012) (noting that, historically, "cases properly brought in equity courts or by courts exercising equitable jurisdiction were tried by judges and not by juries").

ORS 167.347 itself evidences the nature of the relief at issue in a proceeding like this one. As relevant here, the statute authorizes a circuit court, upon a finding that there is probable cause to believe that an animal has been criminally mistreated, to (1) require a security deposit or bond to cover the costs of caring for the animal as it is being held in an animal care facility and (2) order the forfeiture of the animal if the security deposit or bond is not paid.[3] The plain

---

[3] ORS 167.347 provides, in part:

"(1)(a) If an animal is impounded pursuant to ORS 167.345 and is being held by a county animal shelter or other animal care agency pending outcome of a criminal action charging a violation of ORS 167.315 to 167.333 [animal abuse, animal neglect, and animal sexual assault crimes], 167.340 [animal abandonment], 167.355 [animal fighting], 167.365 [dogfighting] or 167.428 [cockfighting], prior to the final disposition of the criminal action, the county or other animal care agency or, on behalf of the county or other animal care agency, the district attorney, may file a petition in the criminal action requesting that the court issue an order forfeiting the animal to the county or other animal care agency prior to the final disposition of the criminal action. ***

"(b) A petition may be filed in the criminal action under paragraph (a) of this subsection concerning any animal impounded under ORS 167.345 and held pending the outcome of the criminal action, regardless of whether the specific animal is the subject of a criminal charge, or named in the charging instrument, in the criminal action.

purpose of ORS 167.347 is to protect agencies from having to pay costs that are the legal responsibility of an animal's owner.[4] *See State v. Branstetter*, 181 Or App 57, 64, 45 P3d 137, *rev den*, 334 Or 632 (2002) (Armstrong, J., concurring) ("What ORS 167.347 does is to provide a way to implement the legal principle that, despite the impoundment, the obligation to provide adequate care for the animals remains the owner's, not the government's."). A forfeiture results only if the owner cannot fulfill that preexisting obligation (by paying

---

"(2)(a) Upon receipt of a petition pursuant to subsection (1) of this section, the court shall set a hearing on the petition. The hearing shall be conducted within 14 days after the filing of the petition, or as soon as practicable.

"* * * * *

"(3) At a hearing conducted pursuant to subsection (2) of this section, the petitioner shall have the burden of establishing probable cause to believe that the animal was subjected to a violation of ORS 167.315 to 167.333, 167.340, 167.355, 167.365 or 167.428. The defendant or any other claimant shall have an opportunity to be heard before the court makes its final finding. If the court finds that probable cause exists, the court shall order immediate forfeiture of the animal to the petitioner, unless the defendant or any other claimant, within 72 hours of the hearing, posts a security deposit or bond with the court clerk in an amount determined by the court to be sufficient to repay all reasonable costs incurred, and anticipated to be incurred, by the petitioner in caring for the animal from the date of initial impoundment to the date of trial.

"(4) If a security deposit or bond has been posted in accordance with subsection (3) of this section, and the trial in the action is continued at a later date, any order of continuance shall require the defendant or any other claimant to post an additional security deposit or bond in an amount determined by the court that shall be sufficient to repay all additional reasonable costs anticipated to be incurred by the petitioner in caring for the animal until the new date of trial.

"(5) If a security deposit or bond has been posted in accordance with subsection (4) of this section, the petitioner may draw from that security deposit or bond the actual reasonable costs incurred by the petitioner in caring for any impounded animal from the date of initial impoundment to the date of final disposition of the animal in the related criminal action.

"(6) The provisions of this section are in addition to, and not in lieu of, the provisions of ORS 167.350 [providing for post-conviction forfeiture of a mistreated animal and post-conviction repayment of reasonable costs of care] and 167.435 [requiring, *inter alia*, post-conviction forfeiture of birds used for cockfighting] and ORS chapters 87 [statutory liens] and 88 [foreclosure of liens]."

[4] ORS chapter 167 broadly imposes the legal obligation to ensure minimum care of domestic animals and equines. *See, e.g.*, ORS 167.340 (defining crime of animal abandonment); ORS 167.325 (defining crime of second-degree animal neglect); ORS 167.310(9) (defining "minimum care"); *see also State v. Newcomb*, 359 Or 756, 767, 375 P3d 434 (2016) (noting that "the obligation to provide minimum care arises for anyone who has custody or control of an animal").

a security deposit or posting a bond) and enables the state to mitigate costs while ensuring that the animals receive the care that is legally required—costs that, prior to the enactment of ORS 167.347, agencies had struggled to recover. *See* Exhibit L, Senate Committee on Judiciary, SB 653, Apr 18, 1995 (statement of Sharon Harmon, Operations Director, Oregon Humane Society) (noting, prior to the enactment of ORS 167.347, that post-conviction restitution of animal care costs, "while often demanded, is rarely fulfilled," resulting in "private and public agencies picking up the tab"). By requiring animal owners to pay a security deposit or post a bond for the care of their animals, and by authorizing the forfeiture of animals when their owners do not pay for that care, the statute thereby prevents the unjust enrichment of the owners while ensuring that the animals will receive the care that is legally required.[5] Thus, the "nature of the relief requested" in a proceeding brought under ORS 167.347 is equitable, in that the statute helps ensure that animal care agencies are not required to cover costs for care that animal owners have a legal obligation to pay.

The legislative history of ORS 167.347 confirms that the nature of the relief that the statute provides is protection against the transfer of animal owners' costs to animal care agencies. Prior to the enactment of ORS 167.347, the legislature enacted ORS 87.159, which provides that, when an agency has provided care for an impounded animal, the agency has a lien on the animal for the reasonable costs of care of the animal and may retain the animal until the owner has paid the lien. Or Laws 1989, ch 349, § 2.[6] But that statute did not protect agencies from incurring costs in the first instance, and, in some situations, those costs were not

---

[5] ORS 167.348(1) provides that, if an animal is forfeited to an agency under ORS 167.347, the agency may place the animal with a new owner only if the new owner "execute[s] an agreement to provide minimum care to the animal."

[6] ORS 87.159(1) provides:

"A person who, or governmental agency that, transports, pastures, feeds, cares for or provides treatment to an animal that has been impounded under ORS 167.345 has a lien on the animal in the possession of the person or governmental agency for the reasonable charges for transportation, pasturage, feed, care or treatment provided by the person or governmental agency, and the person or governmental agency may retain possession of the animal until those charges are paid."

recoverable, such as when an owner did not want to reclaim the animal or when an owner was unable to pay the lien.

The limitations of using liens on animals to recover the costs of their care came to the attention of the legislature after one county incurred approximately $100,000 in costs caring for impounded animals pending resolution of an animal abuse case. Exhibit R, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 3377, Mar 22, 1995 (statement of Professor Pamela Frasch) (describing "the notorious Kittles case in Astoria" where over 100 dogs were found living on a bus). Motivated by that case, the legislature enacted Senate Bill 653, codified as ORS 167.347, the statute at issue here, to provide an alternative method to protect agencies from suffering significant losses as a result of having to care for impounded animals. *See* Tape Recording, House Committee on Judiciary, SB 653, May 9, 1995, Tape 30, Side A (comment of Rep Veral Tarno) (noting that the bill was intended to address problems with the current statutory scheme evinced by the Kittles case); Tape Recording, Senate Committee on Judiciary, SB 653, Apr 18, 1995, Tape 112, Side A (statement of Sharon Harmon, Operations Director, Oregon Humane Society) (noting that post-conviction restitution of animal care costs "just doesn't happen"); *see also Branstetter*, 181 Or App at 64-65 (Armstrong, J., concurring) ("In ORS 87.159, the legislature gave the animal care agency a lien on the animals to cover the cost of their care. In ORS 167.347, it provided a swifter and more efficient method of achieving the same result."). ORS 167.347 was not intended to provide financial gain; it was intended only to enable county animal shelters and other animal care agencies to avoid "unnecessary expense." Exhibit K, Senate Committee on Judiciary, SB 653, Apr 18, 1995 (statement of Robert Bovett, Assistant County Counsel, Lincoln County).

As mentioned, whether the Article I, section 17, jury trial right applies in a case depends on whether the case is one "in which the right to a jury trial was customary at the time the Oregon Constitution was adopted" or is "of like nature." *Horton*, 359 Or at 173. We have not found an exact historical analogue to a proceeding brought under ORS 167.347. But ORS 167.347 is similar to a former

Oregon statute that this court considered in *In re Idleman's Commitment*, 146 Or 13, 27 P2d 305 (1933), that required certain close relatives of "any person committed to a state institution for the insane or the feeble-minded" to pay for the care of the institutionalized person. *Id.* at 15 (construing Or Laws 1931, ch 187). That statute authorized "summary proceedings to enforce a relative's liability created by the statute to support an indigent member of his family." *Id.* at 30. In *Idleman's*, a husband who had been ordered to make payments for the care of his wife while she was committed to a state mental hospital challenged the statute, arguing that it violated Article I, section 17, because it did not provide for jury trials. This court rejected that argument on the ground that, "in proceedings of the character now before us[,] trial by jury was not available" at the time of the adoption of the constitution. *Id.*

Similarly, in *Mallatt v. Luihn et al*, 206 Or 678, 695-96, 294 P2d 871 (1956), this court held that a statute that authorized the creation of a lien on a relative's property to enforce the relative's support obligation, and provided that a circuit court proceeding regarding the support obligation was to "proceed as a suit in equity," did not violate Article I, section 17, because the issues in such a proceeding were "not such as were triable by a jury at the time of the adoption of the Constitution." *See also Miramontes*, 352 Or at 410 (stating that the claims at issue in *Idleman's* and *Mallatt* "were of such a nature that they would have been tried to the court at common law").

Thus, both *Idleman's* and *Mallatt* show that proceedings to enforce a person's legal obligation to care for someone who is being held by and cared for by the state or other government entity are not the types of proceedings that were tried to a jury at the time of the adoption of the constitution.

To summarize, the nature of the relief that ORS 167.347 provides—relief from having to pay ongoing costs for animal care when the animal's owner is legally obligated to pay for that care—is equitable, in that it protects against unjust enrichment of the owner. In addition, this court has held that there is no jury trial right in proceedings under

statutes that, like the one at issue here, require a person to reimburse the state for providing care that the person has a legal responsibility to provide. Those two indicators lead us to the conclusion that a proceeding brought under ORS 167.347 does not involve a claim for relief that would have been tried to a jury at the time of the adoption of the constitution, and, therefore, is not one to which the Article I, section 17, jury trial right applies.[7]

In arguing otherwise, Hershey relies on two cases involving *in rem* civil forfeitures: *1920 Studebaker Touring Car*, 120 Or 254, and *State v. Curran*, 291 Or 119, 628 P2d 1198 (1981). Each of those cases involved the forfeiture of automobiles allegedly used to transport contraband. In *1920 Studebaker Touring Car*, this court held that the owner of the vehicle at issue, who was not a defendant in the related criminal action, was entitled to a jury trial under Article I, section 17, before she could be deprived of the vehicle, which was alleged to have been used by her husband to transport liquor in violation of a prohibition law. 120 Or at 271. In *Curran*, this court held that a convicted defendant, who was the alleged owner of a vehicle used in the underlying crime (possession of a controlled substance), was entitled to a jury trial to determine any factual issues relevant to the forfeiture proceeding that had not been resolved in the related criminal action. 291 Or at 133. According to Hershey, a proceeding brought under ORS 167.347 is of "like nature" to the forfeiture proceedings at issue in *1920 Studebaker Touring Car* and *Curran* because "it is an action in which the State can deprive an individual of their personal property because of the property's connection to an alleged crime."

Although a defendant's failure to pay a security deposit or post a bond under ORS 167.347 may result

---

[7] We note that our conclusion is consistent with the legislature's express recognition that an animal owner's failure to reimburse an agency for the costs of caring for an animal, even in the absence of a conviction, may result in the owner being unjustly enriched. Subsequent to the enactment of ORS 167.347, the legislature amended ORS 87.159 to require, as relevant here, that, even where an animal is found to have been seized without probable cause and a judgment is entered in the defendant's favor in the related criminal case, a court directing return of the animal must "include an award to the [agency] of the full costs of providing care to the animal" in order to prevent the owner "from being unjustly enriched while having been relieved of the duty to provide an impounded animal with minimum care." Or Laws 2013, ch 719, § 9.

in forfeiture of the defendant's animals, that remedy is of a different nature than the forfeitures at issue in *1920 Studebaker Touring Car* and *Curran*. As the United States Supreme Court has explained, in an *in rem* civil forfeiture proceeding, "[i]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient." *Various Items v. United States*, 282 US 577, 581, 41 S Ct 282, 75 L Ed 558 (1931); *see also 1920 Studebaker Touring Car*, 120 Or at 258 (noting that the forfeiture procedure at issue was not "an action *in personam* against some offending person" but, rather, "a special proceeding *in rem* against specific property *** because of some unlawful use having been made of it in violation of the state prohibition law"). Thus, the nature of the relief requested in an *in rem* civil forfeiture proceeding is different than that sought in a proceeding brought under ORS 167.347, in that the relief sought in an *in rem* civil forfeiture proceeding is not intended to prevent the inequitable shifting of legal obligations. Instead, it is intended to impose a consequence for past misconduct; an *in rem* civil forfeiture proceeding is similar to a criminal proceeding, in that, as the Supreme Court has observed, it is based on a legal fiction that the property has committed a crime. *Various Items*, 282 US at 581; *see also Plymouth Sedan v. Pennsylvania*, 380 US 693, 697, 85 S Ct 1246, 14 L Ed 2d 170 (1965) (noting that an *in rem* civil forfeiture proceeding is "quasi-criminal in character" in that "[i]ts object, like a criminal proceeding, is to penalize for the commission of an offense against the law"). In that way, an *in rem* civil forfeiture proceeding is markedly different from a proceeding brought under ORS 167.347, which is not intended to impose a consequence for past misconduct but is instead intended to prevent the inequitable shifting of legal obligations. *See Branstetter*, 181 Or App at 66 (Armstrong, J., concurring) ("The purpose of ORS 167.347 is to enforce the owner's obligation to care for the animals; the statute does not impose a penalty of any sort for any kind of misconduct."). Given the differences, we conclude that *1920 Studebaker Touring Car* and *Curran* do not control the outcome of this case.

The decision of the Court of Appeals and the order of the circuit court are affirmed.